## STEER v. LITTLE.

If a question to a witness is allowed in the exercise of the discretion of the court to admit leading questions in certain cases, that discretion will not be revised.

If a question is objected to as leading, and admitted generally, and an exception saved, the point reserved is whether the question is leading, unless the case shows it to be admissible within the exceptions to the rule.

The question, "Have you traced the dividing line through your lot?" the place of the line being the matter in dispute, is admissible—it being introductory merely.

"State what Mrs. S. said as to holding by virtue of your deed all but fifty acres of said lot," is leading; because the words, "all but fifty acres of said lot," assume that the claim made related to that.

"State whether L. denied the right of S. to hold what his deed covered by reason of an agreed line? If so, what line?" is admissible; the object being to prove what was not denied.

A wife's declarations are not evidence against her husband, though she is a party, and the suit is brought in her right.

A wife's declarations are not evidence because her husband was where he might have heard them. It must be shown that he was attending to what she said.

TRESPASS *quare clausum.* The plaintiff owned the north part and the defendant's wife the south part of a lot laid out and conveyed as a one hundred acre lot; but there was evidence tending to show that it contained more than one hundred acres — the exact number of acres not being agreed upon by the parties, nor clearly proved by the evidence. The question between the parties was the location of the dividing line between them. The defendant claimed and introduced evidence tending to prove that a line run by one Goodall, giving the plaintiff fifty acres, had been agreed upon by the parties as the dividing line. The plaintiff introduced evidence tending to show that no line had been agreed upon, and that a line dividing the lot into two equal parts was the dividing line. There was evidence tending to show that the south line of the lot was in dispute. Subject to the defendant's exception, the plaintiff was allowed to prove how far south the defendant occupied and claimed that his part of the lot extended.

The defendant objected to the following question, put to S. Whiting, as leading: "Have you traced the dividing line through your lot?" The court ruled that the question was leading, but that it might be put; and the defendant excepted.

The defendant excepted to the admission of the following testimony of D. Moffatt: "The defendant said the lot overrun, and he supposed it did, when they (defendant and wife) bought it, from eighteen to twenty acres; that the plaintiff had bought but fifty acres, and that the deed to the defendant's wife covered the rest. Last Tuesday the defendant pointed out to me on the lot a couple of logs, and they were on the plaintiff's side of the Goodall line. They were worked up." The locality of these logs, and the fact that they were cut and worked, were material in the case.

One Rowell testified in a deposition to conversations when the plaintiff and the defendant and his wife were present. The defendant objected to the third and fifth interrogatories, as leading, and to the answer to the fifth interrogatory, on the ground that the declarations of the defendant's wife are inadmissible in the case. The court allowed the questions and answers to be read, and the defendant excepted. The interrogatories and answers were as follows:

" 3. State what claim Mrs. Little and her husband made as to holding, by virtue of your deed to her, all but fifty acres of said lot?

*Ans.* She stated that I had deeded to Stephen Steer, or to Maria

Smith, previous to her deed, fifty acres of the other end of the lot, and to her the residue to the Woods lot; and if I had not bounded her on the Woods lot I should still have held a gore there of the overplus. I deeded her fifty acres, to the Woods lot. She claimed the overplus because I bounded her on the Woods lot.

5. State whether Mr. Little or Mrs. Little denied or disputed at that time the right of Mr. Steer to hold what his deed covered, by reason of any agreed line? If so, what line?

*Ans.* They did not. I don't mean to be understood that she admitted it. She claimed that in my deed to Maria Smith I confined her to just fifty acres. She made no claim by virtue of any agreed line."

The jury returned a verdict for the plaintiff, which the defendant moved to set aside.

*C. & W. E. D. Rand,* for the defendant.

*H. & G. A. Bingham,* for the plaintiff.

BELL, C. J. To the general rule that leading questions shall not be put to a witness, there are certain exceptions, as well settled as the rule itself, in which the judge, in the exercise of his discretion, may permit such questions. These exceptions are fully discussed in the recent case of *Carr* v. *Severance*, 43 N. H. 65.

If the case shows that the ruling of the judge was made in the exercise of his discretionary power to admit leading questions in proper cases, the court will not revise the decision. It is often impracticable for the revising court to possess themselves of all the facts and circumstances which might properly have a bearing upon the decision. *Hopkinson* v. *Steele,* 12 Vt. 584; *Parsons* v. *Huff,* 38 Me. 138, and cases cited.

If objection is made to a question as leading, and it is merely overruled or the question allowed, the point decided is, that the question is not leading, and the party is entitled to his exception. No question of discretion is raised. *Williams* v. *Eldridge,* 1 Hill 249; *Page* v. *Parker,* 40 N. H. 53. Where the question objected to as leading is admitted, the exception must be allowed, and the verdict set aside, if the exception is well founded, since no discretion is involved in that case, except where the question rejected was put in the cross examination. *Parsons* v. *Bridgham,* 34 Me. 240.

Still, if the case, as stated, shows that the question was admissible, though leading, and that it must have been admitted in the exercise of a proper discretion, the verdict will not be disturbed.

Such seems to us the question put to Whiting. The court ruled that it was leading, but that it might be put. It must be understood that the judge allowed it in his discretion. It was merely introductory to something that might be material, and it was properly allowed.

Questions deemed leading, of most common occurrence, fall into three classes. *Willis* v. *Quimby,* 31 N. H. 485; 2 Stark. Ev. 123; Greenl. Ev. 481.

1. Where they call for no other answer than a simple affirmative or negative, as yes or no, or the like, the witness merely assenting to the language of another. The witness is to answer in his own language; the counsel is not allowed to substitute his own artful statement for that of the witness. *Budlong* v. *Van Nostrand*, 24 Barb. 26; *Page* v. *Parker*, 40 N. H. 53; *Dudley* v. *Elkins*, 39 N. H. 84.

In the case of *Spear* v. *Richardson*, 37 N. H. 31, it was held that the question, "Did he" (the horse in question) "ever have a cough?" was not leading. It was not such as to instruct the witness which way to answer it. The form of the question was not suggestive of a negative rather than an affirmative answer. And this was true. But if the question had stood alone it would be liable to an objection which would equally render it leading; that it called for a simple yes or no to a question perhaps artfully worded by counsel to serve his purpose, instead of calling upon the witness to state his knowledge of the facts in his own language, which might have a materially different import. But the question was not open to this objection, because it was part of a question only, the whole of which, taken together, did call for a statement of the witness' knowledge, in his own words, so that this case is in harmony with other decisions on the subject.

2. Where the question is so framed or so put as to suggest to the witness the answer desired. *Williams* v. *Eldridge*, 1 Hill 249; *People* v. *Mather*, 4 Wend. 229; *Parsons* v. *Bridgham*, 34 Me. 240.

3. Where the question assumes any fact which is in controversy, so that the answer may really or apparently admit that fact. Such are the forked questions habitually put by some counsel, if unchecked; as, What was the plaintiff doing when the defendant struck him? the controversy being whether the defendant did strike. A dull or a forward witness may answer the first part of the question, and neglect the last. *People* v. *Mather*, 4 Wend. 229.

There is no form of question which may not be held leading — the court being constantly compelled to look beyond the form to the substance and effect of the inquiry. If a question suggests to the witness either the matter or the language desired, it is to be disallowed. *Parsons* v. *Huff*, 38 Me. 138; *Hopper* v. *Commonwealth*, 6 Gratt. 684, cited in 4 Wend. 247; *Page* v. *Parker*, 40 N. H. 53; *Hopkinson* v. *State*, 12 Vt. 584; *Willis* v. *Quimby*, 31 N. H. 485; *Bartlett* v. *Hoyt*, 33 N. H. 165.

We are well aware that it has been held elsewhere that the admission of a leading question is a matter resting in the discretion of the judge, and is no ground for a new trial; *Bliss* v. *Sherman*, 47 Me. 253; *Parsons* v. *Huff*, 38 Me. 138; that it is a matter always in the discretion of the court, subject, however, to be reviewed, and will not be regarded as error unless the discretion has been abused. *Cope* v. *Sibley*, 12 Barb. 522; *Budlong* v. *Van Nostrand*, 24 Barb. 26.

But we think neither of these views has ever been entertained here; that, on the contrary, verdicts have often been set aside on account of erroneous rulings in relation to the admission or rejection of evidence objected to as leading; that the discretion of the court has not been regarded as extending to every case, but has

been confined to the cases enumerated in *Severance* v. *Carr*, 43 N. H. 65, and analogous cases ; and that here no inquiry would be incidentally made into any such question as is spoken of in the New-York cases, of *abuse of discretion producing injustice.* Here the inquiry is limited to the question whether the court assumed to act by virtue of its discretionary powers in a proper case.

It is never difficult for counsel to change the form of inquiry, so as to obviate any just objection. It is always their duty so to frame their questions at first as to leave no room for objection. It is essential to the fairness of trials that they should be held to make their inquiries properly. If a lax practice is allowed, there are counsel whose questions would be all leading ; knowing they would be required to change their form, if objection was made, and trusting that the question and the discussion would teach the witness what was wanted. In such case the mischief is not obviated by changing the form of the question.

A strict regard to the rule of law in this respect is particularly important in the case of depositions, where the witness, being absent at the trial, the form of the question can not be changed to obviate the objection. It is fair to presume that the party who persists in putting a leading question in a deposition, after objection is made, believes he shall gain more by his question if the answer is admitted, than he shall lose if the question and answer are both rejected. No doubt or presumption should prevent their rejection in such a case.

The third interrogatory to Rowell was free from objection, as admitting a mere affirmative or negative answer. It called for and received an answer in the language of the witness himself. But it was a leading question because it suggested to him that the answer desired related to " all but fifty acres of said lot," and assumed that the claim inquired of related to that. What claim was made was a matter in controversy. The question should have been modified at once, so as to obviate the objection. As that was not done the question and answer should be disallowed.

The fifth interrogatory was leading, because it admitted the answer yes or no. If the material point had been what line was denied, the closing part of the question would have prevented its being leading. The whole question together called for an answer in the language of the witness. But this interrogatory, though leading, was one which it was competent for the court to admit in the exercise of its discretion. The object of the question manifestly was to inquire what was not said ; and it is not easy to conceive how such a question could be framed without turning the witness' attention directly to the very matter supposed not to have been said. A witness might be able to testify that certain things were said, and that nothing more was said. If he could not do that, no amount of testimony merely of what was said would prove that another thing was not said, and some form of question embracing the matter to be denied must be admissible. If it had been admitted on this ground there would be no objection.

The testimony of Moffat is not seen to be objectionable. The

acts and declarations of a party against his interest are always competent. The evidence appears to have been offered as tending to disprove the claim of the defendant on the trial, that there was an agreed line between the lands of the parties, because when he spoke. to the witness on the subject he placed his claim on other grounds, without alluding to that on which he now relies.

It is said the defendant is not to be prejudiced by reason of mistaking his defense; and it is true he will not be concluded from insisting on any defense which he can establish in proof, by his silence on the subject, unless the other party has been induced thereby to change his position. This we understand to be the effect of the decision in *Hildreth* v. *Pinkerton Academy*, 29 N. H. 227. Here no mistake is shown to exist.

The objections further made to the interrogatories and answers, raise the question whether the declarations of the defendant's wife were admissible evidence against him. She is the owner of the land the boundaries of which are in dispute, but she is not a party to the suit. A wife can not be a witness against her husband. *Breed* v. *Gove*, 41 N. H. 452; *Kelly* v. *Proctor*, 41 N. H. 139. Her statements out of court, as the defendant contends, are generally mere hearsay. But the admissions of a party really interested, though not a party to the action, are generally evidence, for the law as to this question regards the real party (2 Stark. Ev. 41), and gives to his admissions the same weight as though he were party to the record. 1 Greenl. Ev. 218, sec. 180; 1 Saund. Pl. & Ev. 51; *Pike* v. *Wiggin*, 8 N. H. 356.

Again : from the case it is to be taken that the husband and wife were jointly seized, in right of the wife, of the land in question; and the general rule is, that where there is a joint interest in several, the admissions of one will be received against the others. *Whitcomb* v. *Whiting*, Doug. 652; 1 Saund. Pl. & Ev. 41; 1 C. & H. notes 397; 1 Greenl. Ev., secs. 220, 190; 2 Stark. Ev. 41. But notwithstanding the community of interest, the declarations of the wife will not in general bind the husband. Even in an action by husband and wife in right of the wife as executrix, her declarations will not be evidence. *Alban* v. *Pritchett*, 6 D. & E. 680; 2 Stark. Ev. 41; *Aveson* v. *Kinnaird*, 6 East 196.

The rule is well laid down by *Weston*, C. J., in *White* v. *Holman*, 3 Fairf. 157, in a real action by husband and wife to recover possession of land claimed in her right. "The policy of the law, which does not admit husband and wife to be witnesses for or against each other, equally extends to the declarations of either, not within any established exception. Aside from this objection, it is undoubtedly true, and well sustained by the authorities, that the confessions of a party to the record, or of a party in interest, are receivable in evidence; but the application of this rule to a *feme covert* who is made a party with her husband, is objectionable on another ground. Her civil capacity is merged in that of her husband. She is incompetent to affect, by any act or declaration of hers, except in connection with her husband, her own interest—much less his; but she would be allowed to affect both, if her declarations or

admissions as a formal party to a suit were receivable in evidence." The same point was decided in *Churchill* v. *Smith,* 16 Vt. 560; *Lessee of Moody* v. *Filmer,* cited 2 Stark. Ev. 708, n.; and see *Aldrich* v. *Earle,* 13 Gray 578.

It is said that the evidence of what was said by the wife in presence of her husband might be admissible against him, as being assented to by his silence. But it seems it was not and could not properly be admitted on that ground. Her declarations are stated, but it does not appear that he assented to what she said, or that he heard and acquiesced by his silence; or that he did not dissent, or that he was even actually present when she was speaking; for the witness says he does not know that they were all present when the conversation took place, and no question was asked in relation to him or his silence. The evidence was in a deposition, and it was for the court to decide whether the evidence was such as to justify a jury in drawing the inference of assent, before it could be laid before them.

The evidence in relation to the claim and occupation of the plaintiff on the south end of the lot was properly received. The controversy related to the line between the two parts of the lot, and evidence as to the outlines and boundaries of the lot must be material in determining the line of division upon any of the theories set up on either side.

*Verdict set aside. New trial granted.*