The State v. Bennett.

———

## THE STATE v. BENNETT, *Appellant*.

1. **Constitution**: AMENDATORY LAWS. Under the provisions of the constitution of 1865, article 4, section 25, it was not necessary in the amendment of prior laws to republish the latter, if the amended law was recited in full with such reference to the old law as would clearly show the change made.

2. ——— : TITLE OF STATUTE. The subject of private detectives and their control is fairly relevant to the police regulations of a large city and may be comprehended in a statute purporting by its

The State v. Bennett.

title to create a board of police commissioners and authorizing the appointment of a police force for the city.

3. —— : ——. The title of an act under a constitution requiring the subjects thereof to be expressed in its title need not embrace every detail of legislation in it; all that the constitution requires is that the subjects embraced in the act shall be fairly germane to that recited in the title.

4. Criminal Law: INFORMATION. An information under the act of the legislature, approved February 17, 1875 (Acts, p. 337), prohibiting any person from acting as a private detective in St. Louis without the written license of the president or acting president of the board of police commissioners, is sufficient which alleges an offense in the words of the statute and then declares that, between certain dates, defendant held himself out to the public as a private detective and entered upon and continued the business of a private detective, and did act as such in various instances within said city at the request of certain persons named and others whose names are unknown, without having a license, etc.

5. Statute: PRIOR SPECIAL LAW, REPEAL OF BY IMPLICATION. A subsequent general law will by implication repeal a prior special one where it appears such was the legislative intention.

6. —— : —— : ——. The provision of law relating to the St. Louis court of criminal correction and providing that informations made by a private person will be sufficiently verified if he shall swear "that he believes it to be true" was repealed by the act of the legislature approved April 12, 1877. (Acts, p. 354; R. S. 1879, secs. 1762, 1766.)

7. Criminal Practice: INFORMATION: VERIFICATION BY PRIVATE PERSON. The verification of an information by a private person is sufficient (under R. S. 1889, sec. 4059), where the affiant states that the facts "are true according to his best knowledge and belief." (State v. Hayward, 83 Mo. 304, distinguished.)

8. —— : EVIDENCE: PRIVATE DETECTIVE. The mere holding one's self out as a private detective, while admissible as evidence to show that defendant was so acting does not of itself constitute an offense under section 2 of said act of 1875. (Acts, p. 337; R. S. 1889, sec. 35, p. 2201.)

*Appeal from St. Louis Court of Criminal Correction.*
THOS. B. HARVEY, ESQ., Special Judge.

REVERSED AND REMANDED.

THIS prosecution began in the St. Louis court of criminal correction.

The amended information, on which the case was tried, reads as follows:

"STATE OF MISSOURI, ⎱ ss.
"City of St. Louis.   ⎰

"In the St. Louis court of criminal correction, St. Louis, March 26, 1886.

"State of Missouri, Plaintiff, ⎫ Charged with acting
          v.              ⎬ as a private detective
"Charles Bennett, Defendant. ⎭ without a license.

"Bernard Dierkes, assistant prosecuting attorney of the St. Louis court of criminal correction, now here in court, on behalf of the state of Missouri, by leave of court first had and obtained, amended information makes as follows: That Charles Bennett, in the city of St. Louis and state of Missouri, on the twenty-sixth day of February, 1886, and on divers other days and times prior thereto between said date and the twenty-sixth day of March, A. D. 1885, did then and there wilfully and unlawfully act as a private detective without having a license so to do from the president or acting president of the board of police commissioners of the city of St. Louis, and did at the place aforesaid and on the days and times aforesaid between the dates aforesaid hold himself out to the public as a private detective and did enter upon and exercise and continue the exercise and practice of the business, avocation or profession of a private detective, and did for others at the instance, request and employment of J. A. Gilliam, J. A. Dittrick, Sarah Dittrick, Gisela Noland, Charles Napton, Thos. Furlong and divers others whose names are unknown act as a private detective in various instances within the said city of St. Louis without having a license therefor from the president or acting president

of the board of police commissioners of the city of St. Louis, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state.

"[ Signed ]                    BERNARD DIERKES,

"Assistant Prosecuting Attorney of St. Louis Court of Criminal Correction.

" STATE OF MISSOURI, } ss.
" City of St. Louis.    }

"Chas. T. Noland, being duly sworn, upon his oath says that the facts stated in the above information are true, according to his best knowledge and belief.

"[ Signed ]                    CHAS. T. NOLAND.

"Sworn to and subscribed before me, this twenty-sixth day of March, 1886.

"PHILLIPP H. ZEPP,

"Clerk of the St. Louis Court of Criminal Correction.

"[ Signed ]              W. L. FITZGERALD,

"Deputy Clerk."

A motion was made by defendant to quash the information but it was overruled by the court and the exception saved. It was based on grounds that will be referred to in the opinion.

The evidence need not be set forth at length further than it appears in the opinion. At its close the court gave, at the instance of the state, the following instructions, viz. :

"The court instructs the jury that, if they believe and find from the evidence that, within the time mentioned in the information in this case and within one year prior to the filing of the same, the defendant, Charles Bennett, did in the city of St. Louis and state of Missouri act and serve as a private detective and so advertise, publish and hold himself out to the public as being engaged in such capacity of private detective, he did all this without having any written license from the

president or acting president of the police commissioners of said city of St. Louis, the jury will convict the defendant of having acted as a private detective without license as charged in the information."

"If the jury convict the defendant they will assess his punishment at imprisonment in the city jail not exceeding six months, or by a fine not exceeding $200, or by both such fine and imprisonment."

"In contemplation of law, the acts, services and other things that may be done by one in the capacity of private detective must be done at the instance and employment of others, that is to say that detective work, which he may do in his personal matters, do not tend to prove him a detective within the meaning of the law."

"The court further instructs that before the jury can convict they must be convinced from the evidence beyond a reasonable doubt that the defendant is guilty; and by the term 'convinced beyond a reasonable doubt' is meant 'convinced to a moral certainty;' but the doubt here referred to must not be a mere conjecture or possibility of innocence but a substantial doubt growing out of the evidence."

The court also refused the following instruction among others asked by defendant:

"3. The jury are instructed that a person holding himself out as a detective does not come within the law and they cannot convict the defendant unless they believe from the evidence beyond a reasonable doubt that he acted as private detective within the city of St. Louis within the time specified in the information."

The jury convicted defendant, and after motions for a new trial and in arrest he appealed here on the ground that constitutional questions were involved, the charge being only for a misdemeanor.

In the motion in arrest the point was made that the information was not properly verified.

*John A. Gilliam* for appellant.

The information purports to be *ex officio*. It, there-fore, required to be verified by the officer, and it was not so verified. R. S. 1879, sec. 1762. Verification by Noland "to the best of his knowledge and belief" is insufficient. *State v. Hayward*, 83 Mo. 304; *Bridge-ford v. Steamboat*, 6 Mo. 356; *People v. Becker*, 20 N. Y. 354; *Election Cases*, 7 Phila. 41; 65 Pa. St. 20, 31; *State v. Fitzporter*, 17 Mo. App. 273; *State v Bach*, 25 Mo. App. 554. The information could not be amended after trial. R. S. 1879, sec. 1766; *State v. Gregory*, 38 Mo. 501; *State v. Smith*, 42 Mo. 550. Such has always been the practice of this court. *State v. Russell*, 88 Mo. 648; *State v. Hayward*, 83 Mo. 304; *State v. Kelm*, 79 Mo. 515; *State v. Crooker*, 95 Mo. 389; *State v. Rochford*, 52 Mo. 199; *State v. Horn*, 93 Mo. 190; *State v. McChes-ney*, 90 Mo. 120. In Connecticut, amendment was refused after statute of limitation had run. *State v. Rowley*, 12 Conn. 101. In Kentucky, enlarging charges were not permitted. *Commonwealth v. Rodes*, 1 Dana, 595. In Virginia, where offense as charged did not amount to a misdemeanor, amendment was refused. *Commonwealth v. Williamson*, 4 Gratt. 554. In Missouri no amendment is permissible after trial. *State v. Rus-sell*, 88 Mo. 648. This court has at least four times, exclusive of this case, decided that there must be uni-formity of proceeding in criminal cases in this state, and that a general law on such a subject controls a special or local law. *State v. Hayward*, 83 Mo. 299; *State ex rel. v. Hoblitzelle*, 85 Mo. 64; *State v. Dolan*, 93 Mo. 467; *State v. Shea*, 95 Mo. 85. And in the case of *State ex rel. v. Francis*, 95 Mo. 44, Judges NORTON and BLACK gave separate opinions sustaining that position.

*B. G. Boone*, Attorney General, for the State.

( 1 ) The information is sufficient. It charges the offense by its legal designation according to the

terms used in the statute. *State v. Davis*, 70 Mo. 467. Where the statute so individuates the offense that offenders have proper notice from the mere adoption of the statutory terms in the information, of what they are charged with no more is necessary. 2 R. S., sec. 35, p. 1536; Whar. Cr. Pl. and Pr., sec. 220. (2) An information by a private person, verified according to his best knowledge and belief, is sufficient under the special law applicable to the St. Louis court of criminal correction. 2 R. S., sec. 19, p. 1514; *State v. Fitzporter*, 17 Mo. App. 273 ;. *State v. Bach*, 25 Mo. App. 554. (3) Appellate courts will not reverse on account of lack of evidence unless there is absolutely no evidence on which to base the verdict. *State v. Hert*, 89 Mo. 590. Besides, it appears from the record, and even from the testimony copied into appellant's abstract and brief that there was ample evidence on which to base a conviction. (4) The fact that Bennett (appellant) had a sign to advertise his business, and advertised otherwise was proper evidence to show what his vocation was at the time he was charged with acting as a private detective. Abbot's Trial Evidence, p. 774; *Com. v. Madden*, 1 Gray, 486; *State v. Wilson*, 5 R. I. 291. (5) The law authorizing the police commissioners of the city of St. Louis to license private detectives (2 R. S., sec. 35, art. 6, chap. 7, p. 1536) is not invalid. It is regularly incorporated into the body of the laws specially applicable to the city of St. Louis, and is not inconsistent with the scheme and charter. Const. of Mo., sec. 20, art. 9.

BARCLAY, J.—The question for first consideration is the constitutional one upon which the case has been brought to this court.

The prosecution is founded on the following statute, viz.: "Sec. 2. The police commissioners of the city of St. Louis shall have power to regulate and license all private watchmen, private detectives and private policemen, serving or acting as such in the city or county of

St. Louis, and no person shall act as such private watchman, private detective, or private policemen in said city or county without first having obtained the written license of the president or acting president of said police commissioners of the city of St. Louis, under pain of being guilty of a misdemeanor."

That section is part of an act approved February 17, 1875 ( Acts, p. 337 ), with the following title, viz.:  "An act amendatory of an act entitled ' An act creating a board of police commissioners, and authorizing the appointment of a police force for the city of St. Louis,' approved March 27, 1861, and also amendatory of an act entitled ' An act amendatory of, and supplementary to, an act entitled " An act creating a board of police commissioners and authorizing the appointment of a police force for the city of St. Louis," approved March 27, 1861,' approved March 13, 1867."

Defendant claims that this act is unconstitutional because it is amendatory of earlier acts and the sections of those acts thereby amended are not set out in full.

The provision of the constitution in force when the act in question was passed, and with which it is supposed to conflict, reads as follows, viz.:

"No act shall be revived, or re-enacted by mere reference to the title thereof ; nor shall any act be amended by providing that designated words thereof shall be struck out, or that designated words shall be struck out, and others inserted in lieu thereof; but in every such case the act revived, or re-enacted, or the act or part of act amended, shall be set forth and published at length, as if it were an original act or provision."   Const. 1865, art. 4, sec. 25.

This provision of the constitution of 1865 did not require the old law to be republished if the amended law was recited in full with such reference to the old law as would clearly show the change made by the amendment. *People v. Pritchard*, 21 Mich. 236 ; *State*

*v. Draper*, 47 Mo. 29; *Mayor v. Trigg*, 46 Mo. 288; *State v. Chambers*, 70 Mo. 625.

In view of our former decisions, on which the legislative department has repeatedly acted, we adhere to the ruling that where the amended law is germane to the original one, and complete in itself, so as to show at a glance the full scope and terms of the amendment, the fact that the old sections are not republished or recited in the new law does not make it unconstitutional.

The objection is also made that the subject of the punishment of persons acting as private detectives without license is not expressed in the title of the act, and that, therefore, it should be held unconstitutional and void. We regard this objection as untenable.

The subject of private detectives and their regulation is fairly relevant to the police regulations of a great city. We think it may properly be comprehended in a statute, purporting by its title to create a board of police commissioners and authorizing the appointment of a police force for such a city, in view of earlier rulings on this subject by this court. The title of an act need not embrace every detail of legislation contained in it. All that the constitution requires is that the subjects embraced in the act shall be fairly and naturally germane to that recited in the title. *State ex rel. v. Ranson*, 73 Mo. 78; *City of Hannibal v. Marion County*, 69 Mo. 571; *State v. Miller*, 45 Mo. 497; *State ex rel. v. Laughlin*, 75 Mo. 358; *Ewing v. Hoblitzelle*, 85 Mo. 64.

The motion to quash the information raised these constitutional questions, and the trial court committed no error in overruling it.

II.   The sufficiency of the information is questioned by defendant.

It will be noted that the alleged offense is a misdemeanor. In charges of that nature "rigid nicety is never exacted," as was remarked in an early case. *State v. Kesslering*, 12 Mo. 565.

It has been sometimes said that an indictment for an offense of that nature is adequate when it pursues the language of the statute under which it is drawn, but such observations must be accepted as limited in their application to the particular cases then under consideration. The general rule they express is subject to important qualifications. *United States v. Henry* (1868), 3 Ben. 29; *United States v. Mills* (1833), 7 Peters, 138.

Our constitution secures to every accused the right "to demand the nature and cause of the accusation." Const. 1875, art. 2, sec. 22. It is therefore essential, even in respect of statutory misdemeanors, that the formal charge should be so expressed as to give the defendant that information. As some of the learned writers of text on criminal law say, the indictment should "individuate" the offense. Exactly what is thereby intended is not absolutely clear, and, indeed, it sometimes seems questionable whether the importation of that word into the criminal law has shed much light on the difficulties of this subject. But, so far as applicable here, we take its proper meaning to be that the charge, besides containing generally the statutory essentials, should be sufficiently definite to give defendant fair notice of the nature of the case he is to meet, to furnish the court a sufficient basis for an appropriate judgment and especially to protect the accused, if acquitted or convicted, against any further prosecution for the same cause. *State v. Lockbaum* (1871), 38 Conn. 400.

In determining whether any given charge reaches this standard with respect to certainty, the analogies furnished by the precedents should be considered.

The offense charged in the case at bar was not such at common law. It is statutory merely, and resembles others of which the gist is the doing, without a license, of some act which the law only permits with one.

In *State v. Cox* (1862), 32 Mo. 566, under a law forbidding anyone to "deal as a merchant without a

license," a charge that defendant did "unlawfully sell at a certain store, stand and place occupied by him for that purpose various articles of goods, wares and merchandise, drugs and medicines, the names of which are unknown to said grand jurors, without having any license or legal authority whatever to sell the same, contrary to the statute," etc., was held sufficient. That ruling was afterwards cited and followed in the similar case of *State v. Jacobs* (1866), 38 Mo. 379.

In *State v. Stogsdale* (1878), 67 Mo. 630, the indictment alleged that "on the twelfth day of October, 1874, and at divers other times and days between that day and the finding of this indictment, at the county and state aforesaid, one James Stogsdale did unlawfully keep, and permit to be used and kept, a pigeon-hole table without then and there, and on said divers and other days and times, having any license therefor, contrary to the form of the statute," etc. This was adjudged a good charge for violation of a statute prohibiting anyone's keeping or permitting to be used and kept any "pigeon-hole table" without a license. It cited and followed *State v. Kesslering*, which approved a similar indictment.

In *State v. Myers* (1876), 63 Mo. 324, the charge ( as appears from the record in this court) was "that Peter Myers late of said county, on the —— day of —— 1872, at the county of Jasper, in the state of Missouri, did unlawfully carry on the business of dealing in buying and selling and shaving bills of exchange, checks, drafts, bank notes, promissory notes and other kinds of writing obligatory, without then and there having a license for that purpose continuing in force, contrary to the form of the statute," etc. Although the opinion therein does not discuss the sufficiency of that indictment, the law then, as now, imposed on the supreme court ( as was said in *State v. Barnett* (1876), 63 Mo. 301) "the duty of examining the whole record" ( Wag. Stat. 1872, p. 1115, sec. 20; R. S. 1889, sec. 4297), and

the judgment of conviction in *State v. Myers*, above, was affirmed. So it may be fairly assumed that the court in that case considered the charge above recited sufficiently definite to inform defendant of the "nature and cause of the accusation" as the constitution required. Const. 1865, art. 1, sec. 18; Const. 1875, art. 2, sec. 22. We venture to say it will be somewhat difficult to show in what respects the indictment in that case is more specific or informative than the information before us now.

In *State v. Little* ( 1882 ), 76 Mo. 52, it was alleged that defendant "on or about the first day of May, 1878, in the county of Webster did unlawfully and wilfully *practice medicine* without having first received the degree of doctor of medicine from some medical college or university duly established by law, and without having registered his name as a practicing physician in the office of the county clerk of said county on or before the first day of September, 1874." This indictment followed the terms of the statute on which it was founded ( R. S. 1879, sec. 6304 ), and was considered up to the mark of definiteness.

Many indictments for selling intoxicating drinks without license have been held sufficient though they did not allege to whom or at what place the sales were made ( *State v. Spain* ( 1860 ), 24 Mo. 415 ; *State v. Jaques* ( 1878 ), 68 Mo. 260 ; *State v. Fanning* ( 1866 ), 38 Mo. 359 ), or what kind of liquor was sold ( *State v. Rogers* ( 1867 ), 39 Mo. 431 ), or the price thereof ( *State v. Ladd* ( 1852 ), 15 Mo. 430 ). Elsewhere, also, we find cases that somewhat enlighten this investigation.

An indictment was held good in *Huttenstein v. State* ( 1861 ), 37 Ala. 157, which charged that defendant "did keep a restaurant or eating-house without a license" under a statute punishing that act.

In *Commonwealth v. Thompson* ( 1861 ), 2 Allen, 507, a charge, that defendant, on a day and in a town named, "did keep a certain dog without said dog being

then and there licensed according to law," was held sufficiently definite although the statute imposed a forfeiture only on such as should keep "a dog not registered, numbered, described and licensed."

The statute, applicable to the case at bar, is leveled at any person who shall "act" as a private detective in the city of St. Louis without first having obtained a license of the president, etc., of the board of police commissioners. The information alleges an offense thereunder in the words of the statute and then declares, that, between certain dates, defendant held himself out to the public as a private detective and entered upon and continued the business or avocation of a private detective and did act as such in various instances within said city, at the request of certain parties named and others whose names are unknown, without having a license, etc.

The allegations as to time are sufficiently certain under the statute which declares immaterial any omission of such statement where time is not of the essence of the offense (R. S. 1889, sec. 4115; *State v. Findley*, 77 Mo. 338), and those respecting the persons, with whom the specially alleged unlawful acts were had, are probably more definite than appears to have been required in some other cases involving unlicensed acts. *State v. Fanning* (1866), *supra; State v. Baker*, 71 Mo. 475; *State v. Braun*, 83 Mo. 480.

The offense as charged is but single, and only one punishment could be applied on the information as now framed. *State v. Stubblefield*, 32 Mo. 563. The pith of it is the prosecution of the business of private detective without license. Whether it was essential (in order to bring the case within the statute) to allege that defendant acted as a detective to the extent of making it a business need not be discussed since that allegation was in fact made. The state's evidence was directed chiefly toward showing that defendant engaged in that business.

It went to show that defendant, within the period mentioned, kept a business office the sign at which was "C. D. Bennett, Detective Agency;" that he advertised "all kinds of detective business promptly attended to" with his name and location of office, in one of the city papers, and one witness (an attorney) also testified that he employed and paid defendant to render him services in searching for information to utilize in connection with a case he had in hand. These facts fairly tended to support the charge preferred.

An allegation that one conducts or prosecutes a certain general avocation or business falls within the rule that where a misdemeanor (merely statutory) is made up of a series of transactions or acts, indicating a general design, which cannot be enumerated on the record without unnecessary prolixity and danger of variance, they ought not to be required to be stated where the charge as formulated is fairly informative of the case to be met. *United States v. Gooding* (1827), 12 Wheat. 460. The allegation that a particular business was carried on without a license belongs to this class. *Sterne v. State* (1852), 20 Ala. 43; *State v. Myers, supra; State v. Little, supra; State v. Sprinkle* (1846), 7 Humph. 36; *Commonwealth v. Pray* (1832), 13 Pick. 362. Considering the whole record, we, therefore, hold the information was sufficiently definite and certain to support the proceedings.

III. It is next contended that the verification of it is invalid, because based on "knowledge and belief," the affiant not being a prosecuting officer. It was evidently done pursuant to the statute relating to the St. Louis court of criminal correction which permits verification on the belief of affiant when the information is made by a private individual. Sess. Acts, 1869, p. 197, sec. 19; 2 R. S. 1889, p. 2155, sec. 19. This statute was in force many years before the form of information was made a topic of state legislation.

Vol. 102—24

It may be conceded that a special or local law is not usually to be considered repealed by a general law on the same subject; but oftentimes the latter has been held to supplant the former when that purpose was manifest. The question is strictly as to the intention of the lawmakers in that regard, to be gathered from the laws themselves, the history of legislation and of judicial decisions in the state with the aid of such other lights as can properly be brought to bear on the subject.

Viewing them all we are of opinion that the act approved April 12, 1877 ( Acts of 1877, p. 354 ), entitled "An act to provide for the prosecution of misdemeanors by indictment or information as concurrent remedies," was intended to apply, as its first section recites, to all courts having jurisdiction of misdemeanors and to establish general rules of practice on the subject to which it relates. We deem it applicable even in a forum previously governed by special provisions of law as was the court of criminal correction in St. Louis.

Treating the general law ( R. S. 1879, secs. 1762, 1766 ) as applying to this case, we must consider the defendant's claim that the verification of the informamation is insufficient under the decision of this court in *State v. Hayward*, 83 Mo. 304. In that case it was declared that an information, by a private person, on information and belief merely, was invalid. The language used in section 1764 ( R. S. 1879, now R. S. 1889, sec. 4059 ) may give some ground for argument in support of a different ruling; but, taken in connection with the clear inference to be drawn from section 1762 ( R. S. 1879, now R. S. 1889, sec. 4057), we think the construction adopted in the decision mentioned should be accepted as settling the law on that point.

But the verification in question now is different from that then discussed. The affiant swears that the facts stated "are true according to his best knowledge and belief." The sufficiency of this language must hence be determined.

Few subjects have given rise to greater diversity of judicial opinions than that of the force and effect to be ascribed to various kinds of affidavits in support of legal proceedings. *Ex parte Haynes* ( 1836 ), 18 Wend. 611. Many, if not most, of the rulings thereon involve the construction of statutes, and throw little light on the question as to what form of words constitutes, generally, a good verification.

It is plain that where certain language is expressly or impliedly required by law to be employed, the verification must substantially conform to such law. But where no such requirement exists the validity of any affidavit must be determined by the application of general principles.

In seeking the aid of precedents on this subject it must be borne in mind that decisions, which have adjudged particular affidavits inadequate to establish the facts or issue at which they were aimed are to be distinguished from decisions relating directly to the sufficiency of the affidavits as such. Evidence may sometimes be competent yet not convincing, and so it is with the instruments of proof now under consideration.

In the present case we find the statute provides that " all informations shall be signed by the prosecuting attorney and be. verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person which shall be filed with the information," and that " the verification by the prosecuting attorney may be upon information and belief." R. S. 1889, sec. 4057. No form is prescribed for the oath of an unofficial person, since it has been ruled in *State v. Hayward* that section 4059 ( R. S. 1889 ) applies only to verifications by prosecuting officers. The question then is what sort of oath will satisfy the requirements of the statute.

In determining this we are at liberty to consider, among other things, the effect which any ruling suggested

may have on the practical administration of the law and, if there is any doubt of the proper meaning of the latter, that construction will be adopted which will give it a reasonable effect. For such, according to a settled principle of interpretation, is presumed to have been the intention of the lawmakers. Rutherforth's Institutes [ 2 Am. Ed.] p. 413.

An information is necessarily made up of allegations of fact and legal conclusions therefrom. The formal charge of the offense is of the latter class and the specific facts constituting it are of the former.

When a person swears to its truth "according to his best knowledge and belief" he does all that should justly be required of him ( *Jackson v. Webster* ( 1820 ), 6 Munf. 462; *Harris v. Heberton* ( 1841 ), 5 How. ( Miss.) 575 ), and we think it would be giving the statute in question an unreasonable effect, destructive of the wise public purposes of its enactment, to hold otherwise.

In making such an affidavit the affiant necessarily asserts knowledge of the specific facts recited. *Roe v. Bradshaw* ( 1886 ), 1 L. R. Ex. 106. The addition of the phrase, "and belief," does not impair the force of the word, "knowledge." *Large v. Creek Co.* ( 1868 ), 30 Ind. 263.

It was once remarked by a very able judge, that, with respect to the law of evidence, "knowledge is nothing more than a man's firm belief" ( *Hatch v. Carpenter* ( 1857 ), 9 Gray, 271 ), and, while we do not regard that ruling as furnishing, or as intended to furnish, a guide to determine the sufficiency of affidavits, it is useful as illustrating the close similitude there may sometimes be between belief and knowledge.

Without attempting to discuss any of the philosophical or philological distinctions between belief and knowledge, but considering the words in their plain and ordinary meaning, as employed in the practical administration of justice, we think it may be safely asserted that while belief ( in its legal sense ) may rest either on

The State v. Bennett.

knowledge or on information ( R. S. 1889, secs. 2049, 2052 ; *Revely v. Skinner* ( 1862 ), 33 Mo. 98 ), yet facts known, and, therefore, believed by an affiant have essentially greater evidential force than such as are believed by him upon information merely.

The sanction of an oath ( regarded as a feature of judicial procedure ) is its quickening of the conscience of the affiant and the liability it creates to the penalty of perjury, if the testimony is wilfully false. This penalty attaches, whatever be the form in which the oath is administered. R. S. 1889, sec. 7119.

There can be no doubt that a prosecution for perjury could be properly predicated on this affidavit, if the other necessary facts existed and were proved.

Want of probable cause of belief on the part of the witness or affiant must ( among other things ) be shown to fix the penalty for perjury upon him, no matter how positive the form of his asseveration in the first instance, while on the other hand the necessary proof in that regard would not be different on such a charge, if the sworn statements were that the material facts were true " according to his best knowledge and belief."

" Viewing the matter from every standpoint, we think this affidavit clearly distinguishable from one based on information and belief, without more ( as in *State v. Hayward* ) and, while we adhere to the ruling condemning the latter in this class of cases, under the statute ( R. S. 1889, sec. 4057 ), we consider the former sufficient.

IV. But the judgment must be reversed for the failure of the court to give instruction, numbered 3, asked by defendant. "Acting as a private detective" without the license is what the statute forbids. R. S. 1889, sec. 35, p. 2201. The mere holding out of one's self as such, while admissible in this case with other evidence, as tending to show that defendant was acting as a detective by carrying on that business, would not, of itself, amount to an offense within the meaning of

the law. The jury should have been so told as requested, especially in view of the language used in the state's instruction which gave an importance and emphasis to the fact of "holding himself out to the public" which it was not properly entitled to, considering the terms of the statute.

V. The other assignments of error need not be discussed, as they concern incidents not likely to recur in event of a new trial. RAY, C. J., and BLACK, J., concurring in this opinion, the judgment is reversed and the cause remanded.

BRACE, J. ( *dissenting* ).—I cannot concur in the second paragraph of the foregoing opinion, nor in remanding the cause.