THOMAS B. FROST *vs*. AMERICAN SURETY COMPANY.

Suffolk.   November 11, 1913. — March 31, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY,
& CROSBY, JJ.

*Private Detective. Bond,* Of private detective.

One who has obtained a judgment against a licensed private detective in an
action against him for trespass, assault and slander committed when acting
under his license, if such judgment after demand remains unsatisfied, has no
remedy on the bond given by such detective under R. L. c. 108, § 36, to the
treasurer of the city whose mayor and aldermen licensed him to act as a
private detective.

A private detective licensed by the mayor and aldermen of a city under R. L.
c. 108, § 36, is not a public officer but merely is permitted to engage in a
business for which a license is required and owes no duty as such detective
except to the person who employs him.

CONTRACT, for the benefit of Ada Alpert, against the surety
on a bond given to the plaintiff as the treasurer of Chelsea by
one Max Sherman, who was licensed by the mayor and alder-
men of that city under R. L. c. 108, § 36, as a private detective.
Writ dated April 24, 1912.

In the Superior Court the case was submitted to *Hall*, J.,
upon an agreed statement of facts, as follows:   The bond sued
upon was dated April 29, 1909.   It was executed by Max Sher-
man as principal and by the defendant as surety.   The amount
of the penalty was $3,000 "to be paid unto the said treasurer of
the City of Chelsea and his successors in said office."   The condi-
tion was as follows: "The condition of this obligation is such, that
whereas, said principal has been licensed by the Mayor and Board
of Aldermen of the City of Chelsea, a Private Detective, for the
detection, prevention and punishment of crime, for the term of
one year from April 29, 1909, to April 29, 1910.   Now, therefore,
if the said principal shall properly discharge all the services
which he may perform by virtue of such license, then this obli-
gation shall be null and void; otherwise it shall remain in full
force and effect."

A short time before November 8, 1909, the principal, Sherman,

as a private detective, was employed by one Alpert, who was then the husband of Ada Alpert, to obtain evidence of adultery of his wife to enable him to procure a divorce, and in pursuance of this plan Sherman with five assistants forcibly entered the premises of one Dora Richmond, the mother of Ada Alpert; that on November 8, 1909, Ada Alpert began an action against Sherman for trespass, assault and slander, as shown by the records of the Superior Court; that the judgment obtained in that action, although demand had been made upon it, had in no part been satisfied; that while Sherman was on the premises in the service of Alpert he then and there declared that he was a detective and made slanderous charges against Ada Alpert by the use of words set forth in the declaration in the action brought by her and demanded an explanation of her conduct and then and there committed the assault and other acts set forth in the declaration in that action; that on November 9, 1909, a letter was sent to the defendant giving it notice of the bringing of the action by Ada Alpert against Sherman, and on December 8, 1911, another letter was sent to the defendant giving it notice that judgment had been recovered against Sherman in that action.

Upon the agreed statement of facts the judge found for the defendant, and at the request of the parties reported the case for determination by this court.

The case was argued at the bar in November, 1913, before *Rugg,* C. J., *Hammond, Loring, Braley,* & *De Courcy,* JJ., and afterwards was submitted on briefs to all the justices.

*S. L. Bailen,* for the plaintiff.

*R. B. Skinner,* for the defendant.

BRALEY, J. The defendant is the surety on a bond given under R. L. c. 108, § 36, by a licensed private detective, and, judgment having been obtained against the principal for trespass, assault and slander, the bond has been put in suit for the benefit of the plaintiff, the judgment creditor.

The first statutory reference to private detectives appears in the St. of 1879, c. 305, §§ 7, 8, entitled "An Act to constitute a district police, and to abolish the State detective force," re-enacted without change in Pub. Sts. c. 103, §§ 7, 8, and in the R. L. c. 108, §§ 36, 37. See *Commonwealth* v. *Connolly,* 97 Mass. 591.

It is made a misdemeanor punishable by fine or imprisonment or both, for any citizen to engage in the general business of a private detective without having obtained a license from the public authorities authorized to grant it.    While the statute expressly provides that the licensee shall not be clothed with the power and authority of constables or police officers, the purpose for which the license is granted is to enable him "to act as a private detective for the detection, prevention and punishment of crime."

It is for the licensing board to pass upon the competency and integrity of the applicant and while by the proviso he is not ranked with public officials entrusted with the conservation of the public peace, yet, in the accepted meaning of the words, he is designated as a person unofficially engaged in obtaining secret information for the use and benefit of those who choose to employ him and to pay his compensation. *State* v. *Bennett,* 102 Mo. 356. The license enables him to engage in a business which, if unlicensed, is prohibited, and, as a precedent condition to granting the license, a bond with sureties to be approved by the licensing board is required, running to the treasurer of the municipality with a condition that the licensee will properly discharge "the services which he may perform by virtue of such license." The "services" obviously are the services rendered in "the detection, prevention and punishment of crime" under his employment by private persons who generally desire to obtain evidence enabling them to support or defend civil actions or criminal prosecutions successfully.

But a private detective, under the statute, is to be distinguished from a sheriff or constable, who is required to give bond conditioned for the faithful performance of their duties. R. L. c. 25, §§ 88, 90; c. 23, §§ 1, 8. These officers are charged with the performance of public, not servile, duties and for tortious acts done under color of their office the person aggrieved may put their official bond in suit. *Skinner* v. *Phillips,* 4 Mass. 68. *Lowell* v. *Parker,* 10 Met. 309. *Cambridge* v. *Foster,* 195 Mass. 411, 416. A private detective, however, performs no official service and he owes no duty except to the person who employs him. The relation is that of master and servant, and the bond is for the protection of the employer alone, who is responsible for the de-

tective's acts of malfeasance. If the condition of the bond is to be so enlarged as to be analagous to the condition of a constable's bond and the benefit of the bond extended to all those who may suffer by a breach, it should be done by legislative enactment.

In the opinion of a majority of the court, the statute, as it now stands, restricts the bond to the protection of the employer, and by the terms of the report, judgment is to be entered for the defendant.

*So ordered.*