SOUTHWESTERN SURETY INSURANCE COMPANY *v.* MILLER
ET AL.

1. DETECTIVE'S BOND—*Who May Sue Thereon.* The employer of the detective, as well as any other person, may have an action upon the bond required by Rev. Stat., sec. 2088, for any injury resulting from the unlawful or dishonest conduct of the detective, in matters within the scope of his employment.

2. LIABILITY OF SURETY. The defendant, a detective agency, had given bond under the statute. A detective in its service, employed by the plaintiff, informed her that money was needed to accomplish the purpose for which he had been employed, and persuaded plaintiff to convey to him certain lands, promising to raise money thereon for the purpose of his employment. In violation of his duty and promise he conveyed the lands, and converted the money received therefor. The surety in the bond was liable thereon for the damage sustained by the fraudulent misconduct of the detective.

3. DAMAGES—*Measure of—Detective's Bond.* One defrauded of lands by the fraudulent representations of a detective as to the need of money for accomplishing the inquiry about which he is employed by her, recovers the value of the land from the surety in the bond of the detective agency employing the detective.

4. PLEADINGS—*Complaint Upon the Detective's Bond,* held sufficient in its statement of the facts.

5. NEW TRIAL—*Newly Discovered Evidence,* the failure to produce it at the trial not being excused, is not sufficient.

*Error to Denver District Court, Hon. Charles C. Butler,
Judge.*

Messrs. WEST & STRICKLAND, Mr. K. D. BATTLE and Mr. N. P. RATHVON, for plaintiff in error.

Mr. EDWIN N. BURDICK and Mr. DE S. DELAPPE, for defendants in error.

Mr. Justice Allen delivered the opinion of the court:

This was an action brought by Carrie Miller, in the name of The People, against the Southwestern Surety Insurance Company, as a surety upon the bond of the Central Detective Agency.

The complaint sets out in full the bond sued upon. The conditions of the bond is as follows:

"Now, Therefore, if the said Central Detective Agency shall lawfully, honestly and faithfully, without oppression and without compounding any criminal offense, carry on said business, and shall perform such services in said business as the Central Detective Agency may be employed to do or perform, and shall obey, do and perform each and every and all duties, terms and conditions and requirements of all of the provisions of the laws of the state of Colorado, now in force, or that may hereafter be adopted applicable and pertaining to such business license, as aforesaid, * * * etc.

This bond was given by the said detective agency in pursuance to section 2088 R. S. 1908, and is conditioned according to the requirements of that statute. The said section provides, among other things, that such bond shall be "conditioned that the principal obligor in such bond shall lawfully, honestly and faithfully, without oppression, and without compounding any criminal offense, carry on the detective business within this state, and perform such services in such business as he may have been employed to do or perform."

The complaint also alleges, in substance, that one Taggert, as agent of such detective agency, was engaged by the plaintiff to perform certain detective work, and while so engaged, Taggert made representations to the plaintiff as to the need of money to carry on the work, and proposed to said plaintiff that money sufficient should be raised by the mortgage of certain lands owned by her; that said Taggert stated to plaintiff that upon her execution to him of a warranty deed to such lands he would proceed to raise the money thereon for the purpose aforesaid; that thereupon plaintiff executed a warranty deed to said Taggert, to be used as security in raising such sum of money, and thereafter the said Taggert falsely and fraudulently made representations to the plaintiff that he was unable to raise such sum of money, but that in truth and in fact the said Tag-

gert did record such deed, and did sell, transfer and convey said lands to a third party, and did receive for such sale, transfer and conveyance the sum of $600.00, without the knowledge or consent of the plaintiff, except as hereinbefore set forth; that the said Taggert converted the said $600.00 so obtained to his own use; that such land was at the time worth $3,200.00.

Most of the assignments of error are based upon the proposition that even though the facts relative to the real estate transactions may be true as pleaded and testified to by the plaintiff below, she is not entitled to recover under the law.  We think none of such assignments of error are well taken.

The first question presented for our determination is the same as that raised by the surety company's demurrers to the complaint, the overruling of which is assigned as error, and that is, whether or not the acts of the detective agency, acting by the said Taggert, and complained of by the plaintiff below, are within the terms and conditions of the bond.

Some effort is made by the plaintiff in error to show that an employer cannot be in a position to sue upon the bond of a detective agency whom he has employed.  Section 2088 R. S. 1908 provides that suit upon such bond may be brought "by and to the use of any person injured by a breach of any of the conditions thereof."  Under the statute the benefit appears to inure to the party injured in case of a breach of the bond.  We deem this sufficient as showing that the employer of a detective agency, as well as any other person, may in a proper case avail himself of the remedy provided for in the statute above cited.  We think the intention of the statute is to give equal protection and to afford a remedy to the employer of detectives, and to persons subject to the detectives' investigations from the unlawful, unfaithful, and dishonest conduct of the detective, in the course of the performance of his duties, within his contractual relations, and within the scope of his employment, if injury should result from a breach of the bond on account of such conduct.  The case of *Frost v. American*

*Surety Co.,* 217 Mass. 294, 104 N. E. 750, Ann. Cas. 1917 A, 583, 104 N. E. 750, is authority for the proposition that the relation of master and servant obtains between the detective and his employer and that the bond is for the protection of the employer.

The further question arises as to what acts may constitute a breach of the conditions of the bond. We can yield no assent to the contention of plaintiff in error that such acts must pertain solely to what is commonly understood to be "detective work."

The statute and the bond has reference to "the detective business." A business is that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit. 9 C. J. 1101. A man may do, in the course and as a part of his business, many acts which would be done if he were engaged in some other business, such as keeping books or making and carrying out agreements for compensation for services rendered, or goods furnished in the business. When he performs these acts he is not popularly understood to be doing anything outside of his regular business. When the detective Taggert committed the acts complained of, he was still regarded by the public, and by all persons concerned as carrying on the detective business, since these acts had reference to securing profit, not as a real estate agent, but in the detective business, the profit being ostensibly and in reality by way of compensation for detective services within his employment by the plaintiff Miller.

The words "carry on the detective business" as found in the statute and in the bond constitute a general expression. General words in a statute should receive a general construction. 36 Cyc. 1118. The words quoted are joined with the conjunction *"and"* to a clause containing the words "perform such services", from which it is reasonable to conclude that while the words last quoted refer to acts pertaining to the work of detecting or investigating, the words first quoted have a broader meaning and are intended to

comprehend acts outside of those pertaining to detective work.

The legislature intended to place the business of private detectives in the hands of trustworthy persons only. This appears from section 2086, R. S. 1908, which provides, among other things, that the application for a license to carry on the detective business shall contain the names of not less than three persons as references, of whom inquiry can be made as to the character, standing and reputation of the party making the application. Mere references, or responses made to inquiries, are not a guaranty of the honesty or reliability of any person. Hence the statute in a subsequent section requires a bond to be furnished by the detective, and the bond is intended to be a security that the detective will carry on his business as a trustworthy person, and that the employer of such detective will not be injured by the manner in which the latter carries on his detective business. The bond is for the protection of the employer, as was stated. While such employer may be injured by an unlawful, unfaithful, or dishonest mode of doing detective work, it is also true that such employer may be injured by fraud practiced upon him by the employed detective in carrying on the business. In carrying on the business the detective may make agreements as to the compensation for detective services; such agreements are a part of the detective business. In the making and carrying out of such agreements the detective has the same opportunity, if not a greater one, to inflict injury upon his employer, than by the manner in which he conducts the detective work contracted for. The intent of the statute is to protect employers in their dealings with detective agencies, so that when such detective agencies are employed to make an investigation they shall deal with their employer "lawfully, honestly and faithfully," as long as business relations arising out of the employment and connected with it continue. The conditions of the bond apply to such acts as are done in the course of employment, and also such acts as are done to

enable the detective to perform his detective duties, or to compensate him therefor.

Detective agencies may violate the terms of the bond without being guilty of the *"oppression"* or the *"compounding of any criminal offense"* mentioned in the statute, since the words "lawfully, honestly and faithfully" each bear their distinct significance and have the same force and effect as if they were not followed by the phrase "without oppression, and without compounding any criminal offense."

We do not think that the plaintiff in error is in a position to complain that the allegations of the complaint were not supported by the evidence or that there was a variance between the pleading and the proof. From our examination of the abstracts of the record we are forced to reach the conclusion that the evidence disclosed a greater degree of wrong-doing on the part of the detective Taggert than that alleged in the complaint, and we are unable to see that there was such a variance between pleading and proof as was prejudicial to the plaintiff in error. Under these circumstances we cannot reverse the judgment on such grounds, especially in this the case in view of section 20, chapter 6, Session Laws of 1911, which provides that the Supreme Court

"shall disregard any error or defect in the proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

There was no material evidence given on the part of the defendant tending to contradict or to rebut the evidence of the plaintiff, except that concerning the value of the land, and the same, being unimpeached, must be taken to be true.

We do not discover any error in the admission of incompetent, irrelevant or immaterial evidence that was in any way prejudicial to the defendant.

The plaintiff in error bases an assignment of error upon the contention that the breach of the bond was not properly pleaded to bind the surety. We think the complaint in its statement of the ultimate facts was clearly within the re-

quirements of section 49, Mills Ann. Code, which provides that the complaint shall contain a "statement of facts constituting the cause of action, in ordinary and concise language, without unnecessary repetition." The complaint sets out the bond in full, which necessarily reveals the conditions therein; then specifically alleges the acts of the detective Taggert which manifestly showed such conduct on his part as was unlawful, unfaithful and dishonest, and a violation of such conditions. This we think an ample pleading of the breach of the conditions of the bond in question, and a full compliance with the code section above cited.

The letter claimed to be newly discovered evidence relied upon as a ground for motion for new trial was not accompanied by evidence tending to rebut the presumption of negligence in not producing the same at the trial as required under the rule. Furthermore, if admitted in evidence this letter would not tend to contradict or rebut the material evidence given on the part of the plaintiff relative to the real estate transactions. There was no error in not granting the motion for new trial on such ground.

On the measure of damages the court instructed the jury, in substance, that if they found from the evidence that the plaintiff was entitled to recover they should award such damages as would, in their judgment after a fair consideration of the evidence, justly and fully compensate plaintiff for the pecuniary damages she had suffered. This appears to have been a fair instruction in that regard under the law, and was substantially the same as instruction 10 requested by the defendant.

The evidence was somewhat conflicting as to the value of the land of which the plaintiff had been deprived by the detective Taggert in a manner alleged to have been unlawful, unfaithful and dishonest in his dealings with plaintiff. It was the duty of the jury to reconcile the testimony in that regard, and on the whole evidence there appears to have been sufficient testimony on which to base the verdict of the jury, and under such circumstances this court would not be justified in holding that the verdict was excessive.

Other assignments of error not hereinbefore noted are not well taken. They present only such questions of law as are already passed upon in this opinion.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice White and Mr. Justice Bailey concur.