# Blunt *v.* Strong *et al.*

*Bill in Equity by Purchasers at Bankrupt Sale, for Correction
of Mistake in Deed, as Cloud on Title to Lands.*

1. *Leading questions to witness.*—To determine when a question is leading, and therefore not allowable in any particular case, no rule of universal application can be laid down, but each case.must, to some extent, be determined by its peculiar facts and circumstances. All the authorities agree, that direct and leading questions may be propounded, when necessary to lead the mind and attention of the witness up to the particular subject upon which he is called to testify ; but, when the witness is interested, or *prima facie* biased in favor of the party by whom he is called, any question is objectionable, as leading, which suggests to him the desired answer, or, embodying a material fact, admits of an answer by a simple negative or affirmative.

2. *General and indefinite interrogatories.*—An interrogatory to a witness, asking if the allegations in four specified paragraphs of the bill are not true, is leading, and is also objectionable for generality ; and in answer to a general concluding interrogatory, asking him to state any other matter or thing within his knowledge, that may be of benefit to either of the parties to the cause, or material to the matters in controversy, the witness can only state matters which are germane or supplementary to his former answers.

3. *Privileged communications to attorney.*—When an attorney is employed to devise and consummate a plan, by which the husband may secure lands to the wife in payment of an admitted indebtedness, and is afterwards employed by the wife to file a bill for the specific performance of the executory contract agreed on, he can not testify as a witness, at the instance of a subsequent purchaser from the husband, against the objection of the husband and wife, that a mistake was made in the description of the lands conveyed.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. WILLIAM H. ROBINSON, as special chancellor, selected by the parties, on account of the incompetency of Hon. H. C. SPEAKE.

The bill in this case was filed on the 30th March, 1874, by Laura A. Blunt and others, children of James R. Blunt, deceased, against Thomas B. Strong and his wife, Mrs. Willie E. Strong, Alfred H. Ellett, who was the father of Mrs. Strong, and several other persons ; and sought equitable relief on the following state of facts, as shown by the bill and exhibits : On the 27th October, 1866, said Thomas B. Strong was seized and possessed of certain lands in said county, on which he resided, and which were situated on the north side of the Winchester road, containing three hundred and thirty acres ; and he also had a reversionary interest in other lands, situated on the south side of said road, which contained about three hundred and twenty acres, and were occupied by his mother, Mrs. Mayhew, to whom they had been assigned as her dower in the estate of her deceased husband.

At the same time, he was indebted to his wife in the sum of about $3,700, for moneys belonging to her statutory separate estate, which he had received and used; and desiring to secure this indebtedness, by the advice of counsel, he executed and signed an instrument under seal, on said 27th October, 1866, by which he agreed and covenanted to hold a part of said lands which were particularly described, for the sole and separate use of his wife, and to convey the same by proper deed to said A. H. Ellett, her father, in trust for her; and his wife also agreed to accept such conveyance in satisfaction of her debt, and she and her father signed the said instrument as parties. On the 15th November, 1866, Mrs. Strong filed her bill in chancery, by said A. H. Ellett as her next friend, against her husband, setting out said covenant and agreement, and asking that her husband might be compelled by the decree of the court to execute a conveyance of the lands as stipulated; and having obtained a decree in said suit, on the 4th December, 1866, her husband executed a deed, pursuant to its terms, conveying said lands, as described in said written instrument, to said Ellett, in trust for her. On the 28th May, 1868, Thomas B. Strong filed his petition in the District Court of the United States at Huntsville, asking to be discharged as a bankrupt; and he obtained his discharge on the 23d June, 1868. Milton Humes was appointed the assignee of said bankrupt; and on the 28th December, 1868, as such assignee, he sold at public auction the lands on the south side of the Winchester road, in which Mrs. Mayhew had a life-estate, and which had been added to the bankrupt's schedule by an amendment. At this sale, Douglas, Donegan & Co. became the purchasers, and received a deed from the assignee in bankruptcy; and on the 14th March, 1872, W. H. Donegan, as the surviving partner of said firm, sold the lands to Mrs. M. M. Blunt, as the administratrix of her deceased husband, in compromise and satisfaction of a debt which said partnership owed to the estate of Blunt; the transaction being authorized by the Probate Court of said county, in which the administration of Blunt's estate was pending, and afterwards ratified and approved by said court, and a conveyance executed to complainants under its decree.

A copy of the covenant or contract between Strong and his wife and Ellett was made an exhibit to the bill. The lands which, by its terms, Strong covenanted to convey to Ellett in trust for Mrs. Strong, were thus described: " *The south-west fourth of section eight;* the north-east fourth of section seven, and the south-west part of the north-west fourth of section eight," describing the last fraction by courses and

distances, and as "containing fifty acres, more or less; all lying and being in township three, range one, east." The same description was carried into the chancellor's decree, and the deed executed under its order. But the bill alleged that the lands were so described by the mistake of the draughtsman, or of the parties: that Strong intended and covenanted to convey to the trustee the lands lying north of the road, of which he was seized and possessed in fee, and not any part of the lands in which his mother had a life-estate, and on which she resided; that the south-west quarter of section *eight* was inserted in the deed, by mistake, instead of the south-west quarter of section *five;* that Strong did not include any land in his original schedule in bankruptcy, and explained to his assignee, as a reason for such omission, that he had conveyed all his lands to said A. H. Ellett, in trust for his wife, and did not deem his reversionary interest in the lands occupied by his mother as worth anything; that when he afterwards amended his schedule, by returning these lands, he described them as incumbered by the dower interest of his mother, with the title in fee in him on her death, and they were thus sold by the assignee in bankruptcy. The bill alleged, also, that said Strong and wife remained in the possession of the hundred and twenty acres in the south-west quarter of section *five,* claiming and using it as a part of the lands conveyed to said Ellett in trust, until the 24th September, 1869, when they discovered the mistake; "and they then fraudulently conspired to surrender said land in section *five,* claim an exemption of it, keep silent as to the mistake until proof of it should be lost, and then claim the south-west quarter of section eight:" that said Strong, in pursuance of this fraudulent purpose, again amended his schedule in bankruptcy, by including said land in section five, and stated under oath, in his application for leave to amend, that he did not know, when he filed his original schedule, that he had any title or interest in said lands, legal or equitable.

Donegan, as surviving partner, the heirs of his deceased partner, the assignee in bankruptcy of Strong, and the administratrix of Blunt's estate, were joined as defendants to the bill, with Ellett, Strong, and his wife; and the prayer of the bill was: "that the cloud on complainants' title, created by said mistake, be removed; that all right, title, and interest, legal and equitable, of said defendants, in said south-west quarter of section eight, and said north-west quarter of section seventeen, township three, range one east, of lands in Madison county, be devested out of them, and vested in complainants; and for other and further relief," &c.

[Blunt v. Strong et al.]

Decrees *pro confesso* were entered against all the adult defendants, except Ellett, Strong, and his wife, who filed separate answers, denying the alleged mistake in the description of the lands. The complainants took the depositions of D. P. Lewis, the attorney who wrote the covenant and contract between Strong and his wife and Ellett, and who was also the solicitor of Mrs. Strong in her chancery suit against her husband; and of Milton Humes, the assignee in bankruptcy of Strong, and of W. H. Donegan; while, on the part of the defendants, the depositions of said Ellett, Strong and wife, were taken on their own behalf. Numerous objections and exceptions were reserved by both parties, most of which require no special notice. The defendants objected to the competency of said Lewis as a witness against them, because he was their attorney and solicitor, and all his knowledge or information was derived from confidential communications; and they also objected to the second and third interrogatories propounded to the witness Donegan, and his answers thereto. These objections will be understood from the opinion of the court.

On final hearing, on pleadings and proof, the special chancellor dismissed the bill; and his decree is now assigned as error.

CABANISS & WARD, for the appellants.

L. P. WALKER, *contra*.

STONE, J.—To determine when a question is leading, and, if leading, when it will be allowed in practice, is one of the most difficult questions the practitioner encounters. So much depends on the nature of the fact sought to be proved, and on the temper and bias of the witness, that no general rule can be laid down, which will suit the requirements of every case. All the authorities agree, that direct and leading questions may be propounded to any witness, to lead his mind and attention up to any subject, upon which he is called to testify; and there are many other questions, which are of such character, that the inquiry must be framed in leading form, else the counsel and witness can not be made to understand each other. Proof of hand-writing, of character, of personal identity, and of many other analogous subjects, are of this class. And when a witness is called to testify against what appears to be his interest or bias, or manifests reluctance, hesitation, evasion, or art, in giving his testimony, the court will permit leading questions to be propounded by the party calling him, so as to elicit the full truth, if possible.

[Blunt v. Strong et al.]

These rules, if they may be called rules, are so much dependent on the circumstances of the particular case, that they can rarely become the subject of judicial review.

But, when the witness is interested, or *prima facie* biased in favor of the party calling him, leading questions should not generally be allowed, farther than to lead the witness up to the subject about which he is to testify. A question which suggests the answer sought, is, as a rule, leading. "Questions are also objectionable, as leading, which, embodying a material fact, admit of an answer by a simple negative or affirmative."—1 Greenl. Ev. § 434. In *Page v. Parker*, 40 N. H. 48, 63, the court said : "The question proposed by the plaintiff to Arioch Wentworth in his deposition was manifestly leading. It suggested a material fact, in such a way as to indicate very decisively to the witness that he was expected to verify its truth by his answer, and might have been answered by a simple affirmative or negative." In *Turney v. The State*, 8 Sm. & Mar. 104, 112, the same doctrine is asserted. In *Lessee of Snyder v. Snyder*, 6 Bin. 483, 490, the court said : "Instead of asking the witness, whether he had heard John Bower say anything, and what, on a certain subject, the words were put into his mouth, viz., ' did he assign to you, as a reason why he would not bid more for the isle of *Cue*, that he could buy Willing's land for 3l. an acre, and that on yearly installments, &c ?' I am of opinion, therefore, that the plaintiffs in error have supported their exception to Miller's deposition." The deposition was ruled out.—See, also, *Sayre v. Durwood*, 35 Ala. 247 ; *Donnell v. Jones*, 13 Ala. 490 ; *James v. Tait*, 8 Porter, 476. And a question is, to all intents and purposes, leading, if it states a material fact, and asks the witness whether it is true or false. This, however, must be taken with the qualifications stated above.

Under these rules, many of the questions propounded to the witnesses, Thomas Strong, Willie Strong, and A. H. Ellett, were leading; and they, and the answers to them, should have been suppressed. We append to this opinion a statement of the particular interrogatories which fall under this ruling.*

The entire deposition of W. H. Donegan, except the answer to the first interrogatory, should have been suppressed. The second interrogatory was leading, under the rule above

---

*Interrogatories propounded to Willie E. Strong that are suppressed: Nos. 5, 6, 7, 12, 14, 18, 19, 32, 33, 34, 35, and all answers thereto.

Suppressed interrogatories and answers in deposition of Thos. B. Strong : Nos. 8, 9, 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 30, 31, 32, 33.

Suppressed interrogatories and answers in deposition of Alfred H. Ellett: Nos. 4, 6, 7, 8, 17, 18, 19, 20, 21, 28, 31, 32.

[Blunt v. Strong et al.]

laid down, and was further objectionable, because it asked the witness to state, in one sweeping answer, whether or not the statements in four named sections of the bill are true. This objection is made manifest, when the answer of the witness is examined. His answer was, they are true. So, the answer to the general interrogatory, numbered 3, is objectionable. To such interrogatory, no answer should be allowed of matter that is not germane to the subject of some special inquiry, and, in a measure, the complement of testimony previously given. To allow otherwise, would be to permit interrogatories to become a delusion and a snare.

We think the witness, David P. Lewis, was not competent to testify to the matters shown in his deposition. He was more than a mere draughtsman, selected by the common choice of the two contracting parties, to reduce their previous agreement to writing.—See *Parish v. Gates*, 29 Ala. 254. The record tends to show, that he was the selected attorney to devise and consummate a plan by which Thomas Strong should secure to his wife payment, in land, of a debt due from the former to the latter. That this must have been his relation to the transaction, is shown by the fact that, after drawing the executory agreement looking to that result, he, as solicitor for Mrs. Strong, filed a bill to have the executory contract ratified and executed, and prosecuted it in her interest to a successful termination. This was attorneyship, and the information he received during, and in virtue of the retainer, was privileged. His deposition should have been suppressed.—1 Greenl. Ev. § 237, and sections following.

There is evidence of acts and admissions by Thomas Strong and Mr. Ellett, done and made in the absence of Mrs. Strong. These are not evidence against her.

The result of the foregoing rulings is to make it proper that much of the testimony, on which the case was tried below, should be retaken. We should probably do injustice to the parties, if we were to offer any comments on the present mutilated state of the evidence; and we abstain from doing so.

The parties are about in equal fault for the condition in which this record comes before us; and we therefore divide the costs equally between the adult parties; half against appellants, and half against appellees.

Reversed and remanded.

BRICKELL, C. J., not sitting, having been of counsel.