(98 South. 378)

## SMITH v. S. H. KRESS & CO.  (6 Div. 793.)

(Supreme Court of Alabama.  Oct. 18, 1923.
Rehearing Granted Dec. 13, 1923.)

**1. Assault and battery ⚎42—False imprisonment ⚎39—Evidence held for jury.**

Evidence *held* to make cases for the jury on counts for false imprisonment of, and assault and battery on, an employee charged with embezzlement.

**2. Witnesses ⚎240(1)—Leading question to party should be avoided.**

A leading question to a party in the cause, with the natural bias growing out of interest, should be avoided.

**3. Witnesses ⚎240(3)—"Leading question" defined.**

Any question expressly or impliedly assuming a material fact not theretofore testified to, so that the answer may affirm such fact, is leading.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Leading Question.]

**4. Witnesses ⚎240(4)—Question as to what plaintiff was asked to say held leading.**

In an action for false imprisonment, where plaintiff testified as to matters tending to show duress of body and mind at the time, a question as to what "they" asked her to say was improper as leading because assuming that she was asked to talk.

**5. Witnesses ⚎240(1)—Leading questions touching res gestæ objectionable.**

Leading questions touching the res gestæ are as objectionable as others.

**6. Witnesses ⚎275(2)—Cross-examination of plaintiff suing for false imprisonment as to carrying money to husband in jail held warranted to show motive for claimed embezzlement.**

In an action for false imprisonment on a charge of embezzlement, defendant's evidence that plaintiff pleaded that her husband was in jail in palliation of her offense *held* to warrant plaintiff's cross-examination as to whether she carried money to him as tending to show a motive to supply his further needs, though her evidence tended to show that she did so prior to her employment by defendant, and that the money was derived from another source.

**7. Principal and agent ⚎116(1)—Secret instructions no defense to action for agent's torts.**

Secret instructions to an agent cannot protect the principal from liability for the agent's torts in the course of the principal's business.

**8. Principal and agent ⚎99—Instructions may be part of contractual relation in fixing line and scope of employment.**

Instructions may be part of the contractual relation between principal and agent in fixing the line and scope of the latter's employment, depending on the character of the agency.

**9. Detectives ⚎4—"Detective" and "private detective" defined.**

A "detective" is one whose business it is to detect criminals or discover matters of secret and pernicious import for the protection of the public, and a "private detective" one engaged by individuals for private protection.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Detective; Private Detective.]

**10. Detectives ⚎4—Mere employment of detective carries no authority to make arrest.**

Mere employment of a detective carries no authority to make arrests as the employer's agent.

**11. Detectives ⚎4—Detective appointed as public officer answerable for abuse of power.**

A detective may become a public officer by appointment from lawful authority, in which case he is answerable for abuse of power.

**12. False imprisonment ⚎23 — Evidence of lack of authority of detective to arrest held admissible.**

In an action for false imprisonment on a charge of embezzlement preferred by a detective employed by defendant, evidence that no authority was conferred to make arrests, and that such power was expressly withheld by instructions to the detective, *held* admissible.

**13. Evidence ⚎256—In suit for false imprisonment, question whether threats were made when plaintiff signed statement held allowable.**

In an action for false imprisonment, a question as to whether any threats were made when plaintiff signed a statement offered in evidence *held* allowable, being in the usual form used in laying a predicate for admission of confessions.

**14. False imprisonment ⚎39—Identity of person making arrest held for jury.**

Whether the arrest of one suing for false imprisonment was by one in whose presence the alleged offense was committed or by an officer of the law *held* for the jury.

### On Rehearing.

**15. Principal and agent ⚎137(1)—Principal silently consenting to agent's abuse of power responsible.**

Where an agent acting under a general contract of employment conferring limited powers exceeds or abuses his power in the presence of and with the knowledge and silent consent of the principal, the latter is responsible.

**16. Officers ⚎116—Responsibility for abuse of power by public officer stated.**

One calling a public officer's services into action is responsible for any abuse of power only when he is an aider or abetter of the wrongful act, or a participant in such sense as to become an accomplice or joint tort-feasor.

**17. Officers ⚎116—Abuse of power by public officer referred to relation to which act pertains.**

An abuse of power by a public officer acting as agent of a private individual should be re-

---

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ferred prima facie to the relation to which the act itself pertains.

**18. Appeal and error ⬦⇒971(3)—Exclusion of testimony held not reversible error in view of other evidence.**

In an action for false imprisonment on a charge preferred by a detective in defendant's employ, exclusion of the detective's testimony, on cross-examination, as to whether he was paid by the day when on duty, *held* discretionary, and not reversible error, in view of evidence that his compensation did not depend on whether he was successful in the case.

Bouldin, Gardner, and Thomas, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Iris Smith against S. H. Kress & Co., for damages for false imprisonment. From a judgment for defendant, plaintiff appeals. Affirmed on rehearing.

These requested instructions were refused to plaintiff:

"(4) If you believe the evidence in this case you cannot find that plaintiff was arrested if it be a fact that she was arrested, for any alleged offense committed in the presence of the person or persons making such arrest.

"(5) If you believe the evidence in this case you cannot find that the arrest of plaintiff was made by any officer of the law, if you find plaintiff was in fact arrested."

Smith & Morrow and Erle Pettus, all of Birmingham, for appellant.

The plaintiff should have been allowed to answer the question, "What did they [the detectives] ask you to say?" as calling for a part of the res gestæ. Blunt v. Strong, 60 Ala. 572; Bolton v. State, 146 Ala. 691, 40 South. 409; L. & N. v. Pearson, 97 Ala. 211, 12 South. 176; Rich v. McInerny, 103 Ala. 345, 15 South. 663, 49 Am. St. Rep. 32; 11 Ency. Ev. 413. The question as to whether the witness threatened plaintiff, or whether plaintiff was threatened in his presence, called for a construction of the conversation, and was inadmissible. State v. Louanis, 79 Vt. 463, 65 Atl. 532, 9 Ann. Cas. 194; Fields v. Copeland, 121 Ala. 644, 26 South. 491; Higdon v. Kennemer, 112 Ala. 351, 20 South. 470. Any evidence tending to show bias, interest or prejudice on the part of a witness is admissible. A. G. S. v. Johnston, 128 Ala. 283, 29 South. 771; L. & N. v. York, 128 Ala. 305, 30 South. 676; Winston v. Cox, 38 Ala. 268; Whitsett v. Belue, 172 Ala. 256, 54 South. 677. Charges 4 and 5 correctly stated the law, and in the state of evidence should have been given. Ferguson v. Shipp, 198 Ala. 87, 73 South. 414; Sou. Ry. v. Hayes, 198 Ala. 601, 73 South. 945; Riley v. Fletcher, 185 Ala. 570, 64 South. 85.

Miller & Graham, of Birmingham, for appellee.

The question to plaintiff, as to what the detectives asked her to say, was leading. The authorities cited by appellant are inapt. The question asked the witness whether he had threatened the plaintiff, called for the statement of a collective fact, and was admissible. 22 C. J. 530; Walker v. State, 85 Ala. 7, 4 South. 686, 7 Am. St. Rep. 17. Whether the detective was paid so much a day while on duty, or a salary, was not admissible to show bias or prejudice of the witness; it had been shown that no difference was made in his compensation, whether he was successful or not. 40 Cyc. 2659; Birmingham Sou. v. Lintner, 141 Ala. 420, 38 South. 363, 109 Am. St. Rep. 40, 3 Ann. Cas. 461; Taylor v. State, 121 Ga. 348, 49 S. E. 303; White v. State, 121 Ga. 191, 48 S. E. 941; Beauchamp v. State, 6 Blackf. (Ind.) 299; People v. Lustig, 206 N. Y. 162, 99 N. E. 183.

BOULDIN, J. This is an action to recover damages for false imprisonment, and for assault and battery. Many questions raised on this appeal relate to rulings of the trial court upon evidence. A review of these rulings makes proper a brief statement of the tendencies of the evidence.

[1] The evidence for plaintiff tended to show that while at her work as an employee of defendant two agents of Bodeker Detective Agency appeared and directed her to go with them to the offices of the detective agency; that she was locked up in these offices, confronted with a charge of having taken the money of her employer, and restitution demanded; that her person was searched; that she was detained several hours while denied outside communication; that finally she was allowed to communicate with her mother, and on her advice paid a portion of the sum demanded, and was released. Plaintiff's evidence tended to show that the manager of defendant's store was present a portion of the time, had knowledge of her detention and search, and joined in the effort to obtain the money claimed to have been embezzled.

The defendant's evidence tended to show that plaintiff had been discovered making sales of candy, ringing up on the cash register a portion of the amounts received, and concealing a portion about her clothing; that she went voluntarily to the office of the agency, was never arrested nor detained; that her person was never searched nor assaulted; that when advised of the charge plaintiff admitted her default, and signed a written statement in the presence of witnesses to that effect. Defendant's evidence further tended to show that plaintiff pleaded the needs of her small child, and that her husband was in jail in Mississippi, in palliation,

and besought the manager of defendant not to prosecute her; that she was at all times treated with kindness and sympathy.

The evidence made a case for the jury both on the count for false imprisonment and the count for assault and battery.

During the direct examination of plaintiff, she was asked: "Now, what did they ask you to say?" The ruling of the trial court in sustaining defendant's objection to this question is presented for review.

In Blunt v. Strong, 60 Ala. 572, this court laid down as clearly as may be the guiding rules to determine when a question is leading, and, if leading, when it should and should not be allowed.

[2, 3] A leading question to a party in the cause, with the natural bias growing out of interest, should be avoided. Any question so framed as to expressly or impliedly assume the existence of a material fact not theretofore testified to, so that the answer may affirm the fact so suggested, is leading.

[4, 5] In the case at bar the witness had just detailed matters which, if true, tended to show she was at the time in duress of body and mind. The question assumes that in this position she was asked to talk, and calls for what she was asked to say. The question was leading, and correctly refused. Leading questions touching the res gestæ are equally as objectionable as others.

[6] There was no error in allowing defendant to ask plaintiff on cross-examination whether her husband was in jail, and whether she had carried money to him. Plaintiff's evidence tended to show that the money carried to the husband was prior to her employment by defendant, and derived from another source. But defendant's evidence of her statements at the detectives' office was sufficient to warrant this evidence as tending to show a motive to supply the husband's further needs. The court below carefully limited the testimony by proper instructions to the jury.

The question of defendant's liability for the alleged acts of the detective agency was one of the issues submitted to the jury. Whether the acts complained of were in the line and scope of the agency's employment was a controverted question. The contract of employment rested in parol. It appeared a contractual relation had continued for several years.

Geo. H. McClerry, manager of the Birmingham store of defendant, testified:

"I made the agreement with the Bodeker Detective Agency myself. We hired them for investigating purposes, collecting bad checks, and things of that kind, just a matter of investigation wholly to watch our interests, inside and out." "There was nothing whatever stated, either verbally or written regarding arrests, but they were instructed not to make arrests."

There was other testimony that instructions were given not to make arrests, and that there were no instructions about arrests. All this testimony about instructions was admitted over the objections of the plaintiff.

[7, 8] Secret instructions to an agent cannot protect the principal from the agent's torts done in the course of the principal's business. Instructions again may be a part of the contractual relation between the principal and agent in fixing the line and scope of his employment. Much depends on the character of the agency. Does the employment of a detective agency carry such apparent authority to make arrests as to be within the scope of the employment, or the course of business?

[9] "A detective is one whose business it is to detect criminals or discover matters of secret and pernicious import, for the protection of the public." "A private detective is one engaged by individuals for private protection." 18 C. J. p. 979. A private detective has again been defined to be "a person unofficially engaged in obtaining secret information for the use and benefit of these who choose to employ him and to pay his compensation." Frost v. American Surety Co., 217 Mass. 294, 104 N. E. 750, Ann. Cas. 1917A, 583.

[10] We think the mere employment of a detective does not within itself carry any authority to make arrests as agent of the employer.

[11] A detective may become a public officer by appointment from lawful authority. In such event he is answerable for abuse of power as other officers.

[12] We conclude that it was proper in the case at bar to admit evidence that no authority was conferred to make arrests, and that such power was expressly withheld by instructions to the detective. It should be added that all questions of prior employment, and instructions given, would be immaterial if the jury should find from the evidence that in the particular case the detectives did arrest, detain, and search the person of the plaintiff with the knowledge and consent of the employer. In such case any indignity or rude treatment to plaintiff while detained would be within the course of employment.

[13] There was no error in allowing the question to witness Emerson as to whether any "threats" were made at the time plaintiff is alleged to have signed the paper offered in evidence. The question was in the usual form used in laying a predicate for the admission of confessions. Crain v. State, 166 Ala. 1, 52 South. 31. The rule would be different in offering evidence of specific threats as criminating evidence.

On the cross-examination of defendant's witness Van Arsdale he was asked a series of questions to this effect:

"Were you paid a salary, or so much a day while on duty? Did you get $8 a day and your expenses, or some fixed amount a day and your expenses, when you were on duty, or were you

on salary?" "I will ask you if you were employed at so much a day or if you were paid a regular salary." "State, first, when you were working on this case whether you were paid a salary or paid so much while on duty working on this particular case." "Whether you were paid the same salary, or whether you were only paid when you were working on a particular case."

The trial court, on objection of defendant, refused to admit this testimony.

The presence or absence of bias in a witness is one of the tests applied in weighing his testimony. One purpose of cross-examination is to develop facts tending to show bias. The inquiry may take a wide range. How far it should be extended is often one of the most difficult problems of the trial judge.

The general rule has been stated thus:

"Any question is proper and admissible which has a tendency to show the personal situation, feeling, relation, or interest of the witness which may have influenced him in giving his testimony on direct examination." 2 Ency. Ev. 407.

"In such cross-examination, a party may investigate 'the situation of the witness with respect to the parties, and to the subject of litigation; his interest, his motives, his inclination, and prejudices; his means of obtaining a correct and certain knowledge · of the facts to which be bears testimony; the manner in which he has used those means; his powers of discernment, memory, and description.'" Winston v. Cox, 38 Ala. 268, 274.

"Great latitude is allowed on cross-examination to show any circumstance, though it might be otherwise immaterial, which has a tendency to show bias or interest on the part of the witness, which might influence his testimony." Whitsett v. Belue, 172 Ala. 256, 54 South. 677.

In applying these rules, this court has held that witness' using a free pass issued by the party for whom he testifies in coming to court is proper evidence. A. G. S. R. R. Co. v. Johnston, 128 Ala. 283, 29 South. 771. That witness is an employee of defendant is a fact generally admitted. In L. & N. R. R. Co. v. York, 128 Ala. 305, 30 South. 676, this court went further, and approved testimony that the witness was working under another employee whose negligence was the subject of inquiry. The payment of the witness' expenses in attending the trial may be shown. L. & N. R. R. Co. v. Stanley, 186 Ala. 95, 65 South. 39.

The witness Van Arsdale gave evidence of detecting plaintiff ringing up a false report of amount received on sales of candy, and concealing a portion about her person. He further testified to occurrences at the interview at the agency's office, after his discovery of her wrongdoing. A natural inquiry was whether this witness had an interest in working up the case against plaintiff. It was shown without objection that he was in the employ of the detective agency. Plaintiff sought to go further and show on cross-examination that he was paid by the day when on duty, instead of a regular salary. If witness' pay depended on his being on duty, would this be an incentive to keep on duty? Would it be to his interest, his personal financial interest, to aid in working up cases? We are led to the conclusion that it would be for the jury to say whether such fact would give the witness such interest in the development of the charge against plaintiff, as to bias his testimony. Nor would the statement of the witness that his pay did not depend on whether he was successful in the case alter the situation. It would still be a question as to his interest in having a case. The principle is the same as that so often discussed and legislated upon in putting public officers on a salary rather than a fee basis. Not that the court would say or intimate as matter of law that any such interest would in fact influence the testimony of a witness. But the jury is charged with the duty of weighing conflicting evidence to find the truth and do justice. In performing that duty they are entitled to know the relation of a witness to a case, any fact which sheds light on his interest in it, so that, in considering all the evidence, they may put a proper value on his testimony. In refusing the testimony as to whether witness was on a salary or was being paid by the day while on duty in this case, the court below erred. In refusing the testimony touching the amount of the witness' compensation we think the court was within his discretion. Necessarily, there must be a limit to the multiplication of issues tending to divert the attention of the jury, prolong trials, and confuse, rather than help, in reaching a just verdict. For example, if the amount paid witness was stated, it could only lead to speculations in the minds of the jury, such as these: Was that amount high or low for the service rendered? What does it indicate as to the standing of witness in his profession? Such speculations could certainly not assist in reaching a just verdict, unless further evidence was offered to show whether the compensation was reasonable, etc., which would at once raise an issue on expert testimony far off the main controversy before the jury.

[14] Whether the arrest, if made, was by a person in whose presence an offense was committed, or by an officer of the law, were questions for the jury under the evidence. Plaintiff's charges 4 and 5 were properly refused.

For the error above pointed out, the judgment of the court below is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

## On Rehearing.

BOULDIN, J. In a full and forceful argument by counsel for appellee on application for rehearing, we are asked to modify or recall the expression in the opinion touching that phase of the evidence relating to arrest and search by the detective with the knowledge and consent of the employer. The criticism is based on that tendency of the evidence to the effect that the detective was a public officer, and that his wrongful acts, if any there were, may be ascribed to his relation to the case as such officer and not as agent of defendant.

[15] The writer deems it proper to correct any misleading tendencies of the statement of the law in question. That portion of the opinion is dealing solely with the question of the principal's responsibility for the acts of his agent. It intends to say that, where an agent, acting under a general contract of employment, but with limited power, exceeds or abuses that power in the presence of and with the knowledge and consent of the principal, the latter is responsible. In such case it is his duty to speak, and not to sanction by silent consent the wrongful act of the agent.

[16] On the other hand, as elsewhere stated in the opinion, a public officer is responsible as such for wrongful acts done under color of his office. In such case the person calling his services into action is responsible for any abuse of power only when such person is an aider or abettor of the wrongful act, a participant in such sense as to become an accomplice or joint tort-feasor.

[17] Where there is the dual relation of officer and agent, the act should be referred, prima facie, to that relation to which the act itself pertains.

[18] The majority of the court, composed of ANDERSON, C. J., and SAYRE, SOMERVILLE, and MILLER, JJ., hold that the allowance of the questions on cross-examination of the witness Van-Arsdale rested largely in the discretion of the trial court, and, in view of the evidence that the witness' compensation did not depend upon whether he was successful in the case or not, the rulings of the trial court thereon present no reversible error. GARDNER and THOMAS, JJ., concur with the writer in the view that the application for rehearing should be overruled.

The application for rehearing is granted, the judgment of reversal set aside, and the cause is affirmed.

ANDERSON, C. J., and SAYRE, SOMERVILLE, and MILLER, JJ., concur.

GARDNER, THOMAS, and BOULDIN, JJ., dissent.