28 So.2d 116

**RAY v. STATE.**

**2 Div. 753.**

Court of Appeals of Alabama.

Nov. 26, 1946.

James (alias Willie James) Ray was convicted of manslaughter in the first degree, and he appeals.

F. F. Windham, of Tuscaloosa, for appellant.

Wm. N. McQueen, Atty. Gen., and MacDonald Gallion, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

Appellant was indicted for murder in the first degree. He was by a jury found guilty of manslaughter in the first degree and his punishment fixed at imprisonment in the penitentiary for a term of five years. A motion for a new trial was duly filed, and denied by the trial court.

A party was in progress at the home of Clay Hearst, the victim in this case, near Panola in Sumter County. A number of negroes attended the party, and at about ten P. M. one of the couples, Archie and Ida May Knott, began a quarrel in the front yard of Hearst's premises.

From this point on the testimony of the witnesses presented by the State is in hopeless conflict with those witnesses who testified for the defense.

The evidence introduced by the State was directed toward showing that Clay Hearst, observing the Knotts' behavior, had asked them to leave. The appellant thereupon injected himself into the situation by admonishing the Knotts "Don't go no damn where." Hearst then told appellant he was not talking to him, but if he wanted to take it up "he could go too." Appellant replied he was not going "any damn where," and thereupon drew a pistol and

pointed it at Hearst's face. Hearst thereupon went into his house accompanied by his wife Kathleen and his fourteen year old son Willie. In his house Hearst got his pistol from a chifforobe, but his wife and son took it away from him and the son placed it under a bed mattress. Hearst then returned to the yard and began talking to the appellant. A tussle between the two developed, during which Willie, Hearst's son, struck appellant with a fence paling. This did not stop the tussle between appellant and deceased and it continued, with deceased backing away. At this stage, Felix Ray, brother of appellant, seized the deceased from behind and appellant struck him with his pistol. Felix Ray then hit or stabbed deceased over the right eye with a knife inflicting a wound from which deceased died several hours later. Immediately after the infliction of the fatal wound appellant and Felix Ray left the scene of the difficulty together.

In irreconcilable conflict with the above evidence presented by the State was that presented by witnesses for the defense, the tendency of which was to show that upon observing the quarrel between the Knotts, and the deceased's conduct, the appellant merely remarked "Ain't no use in you all doing that," at which time deceased rushed in his house and returned with a pistol which he presented at Felix Ray. Felix and deceased engaged in a tussle and Felix stabbed deceased. Then according to appellant he went up to separate them, and "When I started back to see could I stop them Felix stabbed him, and then Felix run by me, and somehow it throwed him in my breast, and when Felix turned loose and run, Clay (deceased) turned against me and throwed the pistol in my face." Appellant said he caught the pistol and that Hearst told him: "Turn my pistol loose. Felix stabbed my eye out."

Appellant and all his witnesses testified that except for the above action which took place after deceased had been stabbed by Felix Ray that appellant was in no way involved in the actions leading to Clay Hearst's death.

The distinction between principals in the first and second degree in cases of felony is abolished by Section 14, Title 14, Code of Alabama 1940, and all persons concerned in the commission of a felony, directly, or by aiding and abetting though not present, are punished as principals as in case of misdemeanors.

While a community of purpose on the part of the conspirators to act criminally must exist at the time of the commission of the crime, such combination may be formed in a flash. It need not be shown that there was prearrangement to do the specific act complained of. When two or more persons enter upon an unlawful enterprise, with a common purpose to aid, advise, or encourage each other in whatever may grow out of the enterprise, each is liable for whatever may consequently and proximately result if the act done by one were within the purview of the common design. West v. State, 25 Ala.App. 492, 149 So. 354; Martin v. State, 89 Ala. 115, 8 So. 23, 18 Am.St.Rep. 91. In our opinion the acts of the appellant in conjunction with those of his brother Felix created a circumstance from which the jury were justified in concluding that appellant aided and abetted Felix in the assault which resulted in the death of Hearst.

Counsel for appellant has set forth eight points in his brief which he argues constitute reversible errors. We will discuss these points in the order which they were set forth in said brief.

In proposition one, counsel argues that the court erred in sustaining the State's objection to the following question propounded to appellant's witness Sam Bailey:

"He (appellant) tried to separate them, didn't he?" In sustaining the objection the court remarked "He can testify to what he (appellant) did but don't lead him." Some three pages later, and after appellant's conduct had been described in detail by the witness Bailey on redirect and re-cross examination the court stated to counsel for appellant "Mr. Windham, the court is changing its ruling and will permit you to ask the witness about the separation if you so desire." Counsel for appellant replied, "I think its been made plain by them." This action by the court obviates any necessity for expressing any opinion as to whether there is any merit to appel-

lant's contention that the question as framed was not leading.

In his second point appellant's counsel argues that the court erred in overruling his objection to the following question propounded to the witness Bailey on cross-examination:

"Q. What was the position of Felix and Clay when the blow was struck?"

Obviously the question pertained to evidence material to this case and was a proper one, particularly on cross-examination. Counsel argues however that the ruling of the court as to this question became infected with error because later in the trial, and while a different witness, Jack Adams, was being examined, the court sustained an objection by the State to a question propounded by appellant's counsel to Adams, which question was:

"Q. Did you see James Ray (appellant) take any part in that?" (The difficulty between Felix Ray and the deceased.)

■■ At the time of the second question no details of the stabbing had been elicited from the witness Adams. Any question expressly or impliedly assuming a material fact not theretofore testified to, so that the answer may affirm such fact, is leading. Smith v. S. H. Kress & Co., 210 Ala. 436, 98 So. 378. It is axiomatic that the allowance or exclusion of leading questions is within the discretion of the trial court, Hendrix v. State, 21 Ala.App. 517, 110 So. 167; certiorari denied 215 Ala. 114, 110 So. 168, and the exclusion of leading questions is proper. Mathis v. State, 15 Ala.App. 245, 73 So. 122; Barber v. State, 11 Ala.App. 118, 65 So. 842.

In his third proposition appellant's counsel argues that the court erred in sustaining the State's objection to the following question propounded by him to the witness Adams on direct examination:

"Q. You say you were there until after Felix had stabbed him?"

■ The question is tainted with a leading character. Further, the record shows that the witness answered "Yes sir" prior to the objection. In addition the information sought by this question had been given previously by this witness. Pal-

pably, no injury resulted to appellant in this instance.

In his fourth proposition appellant's counsel complain that the court erred in sustaining the State's objection to the question propounded to appellant's witness Adams on redirect examination which was as follows:

"Q. When you went out your attention was attracted when Knott and his wife got into a fight. That is correct is it not?"

What has been said above as to leading questions is equally applicable to this question and no further comment is deemed necessary.

In his fifth proposition appellant's counsel contends that the court erred in permitting the State to cross examine Felix Ray as to statements made by him to Mr. Hardin, Sheriff of Sumter County, concerning the killing of Hearst, which statements would tend to discredit the version Felix Ray had just given from the witness stand on direct examination.

■ It is proper to cross examine a defendant's witness as to statements made by him to others relative to the offense, when such statements would tend to contradict the account given by the witness in his testimony at the trial. Merrill v. State, 22 Ala.App. 350, 115 So. 701.

In his sixth proposition appellant's counsel contends that the trial court erred in sustaining the State's objection to that portion of his argument to the jury wherein appellant's counsel said in referring to the testimony of Willie C. Hearst:

"Probably some of the other side had talked to him, that's why he changed."

■ While wide latitude is allowed in commenting on the evidence, and legitimate inferences to be drawn therefrom, the trial court was well within its discretionary powers in sustaining the objection to this portion of counsel's argument. Propriety of argument is largely within the trial court's discretion. Gaines v. State, 23 Ala. App. 166, 122 So. 699, certiorari denied 219 Ala. 422, 122 So. 700. Nothing appears in the record from which counsel could legitimately infer that "the other side" had talked to the witness Hearst.

In his seventh proposition appellant's counsel contends that the trial court erred

560

in refusing to give his requested written charges Nos. 1, 2, and 3.

Charges 1 and 2 pertained to murder in the first degree and murder in the second degree. Since appellant was found guilty of manslaughter in the first degree only, no injury could have resulted in the court's refusal to give these charges. Even had the jury found the appellant guilty of homicide in either degree to which the charges were applicable it is our opinion that the court's action in refusing same would have been proper under the developed evidence of this case.

Charge No. 3 was the general affirmative charge and the court's action in refusing to give it is so patently correct that no comment or citation is indicated.

Appellant's counsel's eighth and last proposition argued was that the trial court erred in overruling appellant's motion for a new trial. We have considered all the grounds on which said motion was based and in our opinion the lower court was entirely correct in denying said motion.

There are some other rulings reserved by exception, but not insisted on in appellant's brief. In accordance with our duty we have examined the entire record, and have found nothing we consider prejudicial to appellant's case. Accordingly an affirmance is in order.

Affirmed.