42 So.2d 500

## WILLIAMS v. STATE.

### 5 Div. 268.

Court of Appeals of Alabama.
July 19, 1949.

Rehearing Denied Aug. 15, 1949.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for the State.

D. T. Ware, of Roanoke, for appellant.

HARWOOD, Judge.

This appellant stands convicted of manslaughter in the first degree, after having been indicted for murder in the second degree.

The evidence tends to show that on the night of April 17, 1948 there had been a supper at a rural school house which was

in the vicinity of the home occupied by appellant, his children, and his mother.

After the supper several men in attendance at the supper came to appellant's premises, apparently without any prearrangement or invitation. Among these was the deceased.

Appellant's house was close to a road used by the public, and his barn was across this road, but near to it.

Some of the evidence tends to show that some noise and disturbances developed among the group that came to appellant's home or yard, and that they were asked to leave by appellant and by his mother.

The deceased left, but returned shortly. Thereafter the evidence is in dispute as to what occurred. The State's evidence was directed toward showing that appellant was in his yard as deceased returned and that appellant shot deceased with a shotgun while deceased was in the road above mentioned.

According to appellant and his young son appellant shot deceased as he was advancing on appellant with a knife threatening to "cut his guts out."

This conflict of course presented a question of fact solely within the province of the jury to resolve.

Counsel for appellant insists that reversible error infects this record because of certain statements made by the Solicitor in his argument to the jury. In this connection the record shows the following:

"Mr. Ware: We object to the argument of the Solicitor in which he has stated that 'This man thought he could get by with this murder because the man he lived with would get his brother-in-law lawyer to get him out of it;' the brother-in-law of the attorney was assisting in the defense. If the Court please, we object to that argument and move that the jury be instructed to ignore it.

"The Court: Gentlemen, you will ignore that part of the argument.

"Mr. Ware: Wait a minute, I didn't get through your Honor. The defendant moves for a mistrial in this case because of the unfounded and unfair argument of an overzealous solicitor venturing out about some white man defending or helping this defendant. It is prejudicial and beyond repair. This defendant cannot possibly obtain a fair and impartial trial after such argument is made to the jury and we are insisting on our motion that this case now be declared a mistrial.

"Mr. Boyd: If the Court please, that part of my argument was invited by, and was in response to, the argument of Mr. Ware, the defendant's attorney that the jury knows that a man like Mr. Warren Sewell would not be hiring a criminal to run his farm.

"The Court: Gentlemen, you will ignore that argument. That argument is not legitimate and there is no evidence whatsoever that the party assisting in the defense is a brother-in-law of the attorney in the case. Mr. Solicitor, you will not make such argument at all to the jury. Your motion is overruled.

"Mr. Ware: We want to further move that the argument be stricken from the record.

"The Court: All the Court can do is exclude it from the jury and the Court has done that. That is argument, gentlemen, and you will consider only the legitimate argument in the case. Proceed.

"Mr. Ware: We reserve it."

In view of the court's action in the premises we are of the opinion that injury, if any, of which appellant can complain, resulting from the above statements was sufficiently eradicated. Certainly any injury remaining was so diluted that its effect can only be said to be speculative. The jury most probably weighed this exchange between opposing lawyers at its true value. Arant v. State, 232 Ala. 275, 167 So. 540.

Charge 1 being affirmative in nature was properly refused under the evidence of this case.

Charges 2 and 3 were refused without error, for in our opinion they were adequately covered by the excellent oral charge given the jury by the trial court.

A question of considerable difficulty has been presented in consideration of this cause by the court's rulings on questions propounded to defense witness R. C. Mad-

den seeking to elicit testimony as to whether this witness saw deceased with a pocket knife at the time of, or just prior to, the shooting.

Two State witnesses, King Herren, and Leroy Joiner, testified on cross examination that they had not seen the deceased with a knife at or just prior to the shooting, though Herren said he had heard "them" say that somebody had a knife in the yard on that night.

Bunk Pittman, a witness for the State, and father of the deceased, who arrived at the scene shortly after the shooting, testified on direct examination that he shook his son and saw he was dead, and he found no weapon, knife, or gun, on deceased.

Mr. Gladstone Kirby, Sheriff of Randolph County, and likewise a witness for the State, testified on direct examination that after his arrival at the scene he searched deceased, and the ground around for weapons, and did not find a knife or a gun.

Evidence was submitted tending to show that no one had removed anything from deceased's body prior to the arrival on the scene of the two witnesses Pittman and Kirby.

After the above evidence elicited during the presentation of the State's case the record shows the following rulings during the direct examination of defense witness R. C. Madden:

"Q. Did you see Son Pittman that night? A. Yes, sir.

"Q. Did you see him with a pocket knife that night?

"Mr. Boyd: Now, we object to that if the Court pleas as it is not shown when nor where, nor is it of res gestae.

"Q. There before this shooting, did you see a pocket knife?

"Mr. Boyd: We object again, it has not been shown when, where, nor is it part of res gestae.

"The Court: You will have to fix the time.

"Q. There that night at the same or approximately the same time the shooting took place?

"Mr. Boyd: We object on the further grounds he is leading the witness and it is his own witness.

"The Court: Sustained on the ground of leading.

"Mr. Ware: We reserve it.

"The Court: It is sustained on the ground of leading. You have your exception.

"Q. Did you see this deceased, Son Pittman, there that night just prior to the shooting, there at Williams' house, or on that path to Otis Williams' house with a pocket knife?

"Mr. Boyd: We object, if the Court please.

"The Court: Sustained.

"Mr. Ware: We reserve it.

"The Court: You have your exception."

The correctness of the court's ruling in the above instance depends upon, whether, under the circumstances disclosed by the record, the questions to which the objections were sustained were leading questions. The materiality of the evidence is obvious, and in light of the fact that appellant and his young son had testified that deceased was armed with a knife on this occasion, the possibly corroborating evidence sought from this witness, not shown to be related to appellant, must be considered of significance.

In Blunt v. Strong, 60 Ala. 572, Justice Stone made the following observations as to the intangible criteria with which a court or lawyer is confronted in determining whether a question is leading in character: "To determine when a question is leading, and, if leading, when it will be allowed in practice, is one of the most difficult questions the practitioner encounters. So much depends on the nature of the fact sought to be proved, and on the temper and bias of the witness, that no general rule can be laid down, which will suit the requirements of every case. All the authorities agree, that direct and leading questions may be propounded to any witness, to lead his mind and attention up to any subject, upon which he is called to testify; and there are many other questions, which are of such character, that the inquiry must be framed in leading form, else the counsel and witness can not be made to understand each other."

Mr. Wigmore has said that "The essential notion, then, of an improper question (commonly called a leading question) is that of a question which suggests the specific answer desired."

It has been said by the Supreme Court of Florida that "The proper signification of the expression is a suggestive question,— one which suggests or puts the desired answer into the mouth of the witness." Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, 110, 56 Am.St.Rep. 170.

■ A test sometimes rather mechanically applied in determining whether a question is leading in character is whether it admits of being answered by a simple "yes" or "no." Mr. Wigmore has characterized so rigid a rule as unsound. See Wigmore on Evidence, 3d Ed., Vol. III, Sec. 772. A question phrased in alternative form, such as "Did you, or did you not," etc., is considered free from the taint of being a leading one. Actually it would appear that a question "Did you," etc. is no more suggestive than the alternative form "Did you, or did you not,"etc. Each is capable of being answered by a simple "yes" or "no." The "yes" or "no" answer test may furnish assistance in many cases in determining the leading character of a question, but it is uncertain and inconclusive, and the ends of justice cannot be served by its mechanical application.

As stated in an early New Hampshire case, Steer v. Little, 44 N.H. 613, 616, "There is no form of question which may not be leading, the Court being constantly compelled to look beyond the form to the substance and effect of the inquiry."

■ And the general test as to whether a question is leading is to the effect that "any question expressly or impliedly assuming a material fact not theretofore testified to, so that the answer may affirm such fact, is leading." Smith v. S. H. Kress & Co., 210 Ala. 436, 98 So. 378; Ray v. State, 32 Ala.App. 556, 28 So.2d 116.

The question arises whether "the material fact not theretofore testified to" must be limited to the prior testimony of the witness then testifying, or whether it is to include a material fact produced by any prior testimony, particularly if such prior testimony has been elicited from witnesses for the State.

In Gilliland v. R. G. Dunn & Co., 136 Ala. 327, 34 So. 25, the Supreme Court in connection with an alleged misleading question on cross examination seems not to have limited the prior evidence to evidence presented by the testifying witness. Analogically this principle is applicable to leading questions on direct examination. Burke et al. v. State, 19 Ala.App. 418, 98 So. 310, seems to clearly extend the meaning of prior evidence or testimony to all evidence previously admitted.

In its ultimate form the first question to which the State's objection was sustained can fairly be paraphrased to read as follows: Did you see the deceased there that night with a pocket knife at the same or approximately the same time the shooting took place?

The second question is of course complete in itself.

■ It is our opinion that the two questions as framed by defense counsel as to whether the deceased had a knife at the time of the shooting sufficiently corresponded to the predicate previously laid by State's evidence tending to show that deceased did not have a knife at the time of the shooting. In view of this prior specific evidence on this point we think that it should be permissive for the defense counsel, as he did, to direct the witness' attention to this specific point in framing his question.

It is our conclusion therefore, that if the two questions now being considered do tend, under certain rather inconclusive tests, to possess a leading character, the background and circumstances under which they were propounded so dilute the embryonic leading character as to eliminate it, and change these into questions possessing an entirely rebuttal character. In this light it is our conclusion that the appellant should have had the benefit of the evidence sought, indisputably material to his defense, and that the court's action in sustaining the State's objections to the two questions constituted error. For this reason this cause must be reversed and remanded, and it is so ordered.

Reversed and remanded.

BRICKEN, P. J., not sitting.