[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 896 
First degree murder; sentence: life imprisonment.
The State's evidence was sufficient to prove appellant's guilt beyond any reasonable doubt. Although appellant testified in his own behalf after the State had rested, in essence he neither challenged nor contradicted the evidence offered against him. Each element necessary to sustain a conviction for first degree murder was firmly established. Cosby v. State,269 Ala. 501, 114 So.2d 250 (1959); Sanders v. State,392 So.2d 1280 (Ala.Cr.App. 1981); Ala. Code § 13-1-70 (1975). Due to the overwhelming nature of the State's evidence, a detailed narration of the facts would serve no useful purpose.
Briefly, appellant left his place of work the morning of January 22, 1979, and traveled by taxi to Willie Mann's house in Smiths Station near Phenix City to find his wife, the deceased. Mann was the deceased's ex-husband, and the deceased sometimes went to Mann's house when she and appellant were separated.
Appellant stated that the deceased "just didn't stay home"; that she "drank the whole time she was gone"; and that she "had been gone for about a week" on this occasion. Appellant testified that he had talked with the deceased several times the previous night and that she sounded drunk. Appellant decided to go to Mann's house "to try to get her straightened out."
On arriving at Mann's house, appellant entered the unlocked back door and waited for the deceased to come in. While waiting appellant found a list containing men's names and telephone numbers in the deceased's handwriting and "decided to beat her up when she got home." Appellant "knew some of the names were people that was [sic] buying Mary's booze for her." At approximately 9:30 a.m., Eastern Standard Time, someone let the deceased out at Mann's house. The deceased was staggering drunk and was carrying a sack of beer.
Appellant met the deceased at the front porch, knocked her down on the floor and kicked her in the face. During the intermittent argument which transpired, and trips to the bathroom by the deceased to wipe the blood from her face appellant continued to strike the deceased with various objects including a transistor radio, an aluminum boiler and a baseball bat. "I beat her with everything that I could find." During the course of the beating, appellant remembered tying the deceased to the bed with a belt and piece of torn cloth so that she could not call the police. After completing his fatal attack, appellant called a cab, "pulled the phone wire loose and left." When Mann returned home from work around 3:15 p.m. that afternoon, he discovered the deceased tied to the bed and beaten to death.
After a flight to Atlanta that evening, appellant was apprehended and placed under arrest the next day in Albany, Georgia. Appellant "couldn't believe" he had killed his wife and maintained that at no time did he have any intention to kill her. "I went over there to help her."
 I
At the time appellant was apprehended in Albany, Georgia, Lieutenant John Lodge, of the Albany Police Department, asked appellant for some identification as appellant got off a bus arriving from Atlanta. Appellant initially made no response. Lieutenant Lodge testified that since appellant was the only passenger that fit the description given him by the Lee County Sheriff's Department he told appellant he was under arrest for murder in Lee County, Alabama. While still at the bus terminal, Lieutenant Lodge asked appellant if he was George Ervin. Appellant again made no response, but then spontaneously exclaimed, "I didn't know that I killed her." Appellant then continued in his exclamation: *Page 897 
 "I beat her with anything that I could. I hid in her apartment, her and her boyfriend arrived and some come in alone. [sic] I tied her to the bed. I beat her with a ball bat and anything else that I could. I didn't know that I killed her, because when I left the house she was still talking to me."
Lieutenant Lodge was emphatic that no process of interrogation of any sort had been started by himself, or any officer in his presence, at the time appellant made his spontaneous exclamation. Appellant was not asked any questions other than his name.
A spontaneous statement, blurted out by the accused and volunteered to a police officer prior to any questioning, is admissible against him even though he was not given the Miranda
warnings. Hammons v. State, 371 So.2d 986 (Ala.Cr.App. 1979);Espy v. State, 365 So.2d 356 (Ala.Cr.App. 1978). An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule. Hammons, supra. Moreover, it is not error to ask a defendant his name before giving him the Miranda
warnings. Hill v. State, 378 So.2d 249 (Ala.Cr.App.), cert. denied, 378 So.2d 256 (Ala. 1979); Lee v. State, 364 So.2d 687
(Ala.Cr.App. 1978). We find that appellant's unsolicited statement was properly admitted.
 II
During the voir dire of the jury venire by defense counsel, one of the prospective jurors responded affirmatively that he had, at some time, had an attorney-client relationship with someone in the district attorney's office or their former law partners. The following exchange then occurred:
 "MR. HARPER (Assistant District Attorney): We object to anything that I may have done for a juror, I don't think that would be proper.
 "THE COURT: Sustained. Mr. Melton, you can ask them if they've had a client-attorney relationship, but not the nature of it."
Although the record fails to reflect what follow-up question defense counsel may have wished to propound to the juror who had the prior attorney-client relationship, we must be guided by that sound principle of law which states that much must be left to the sound discretion of the trial court as to the nature, variety and extent of the questions that should be asked prospective jurors by the parties, or their counsel, in the process of selecting the jury to try a case. Peoples v.State, 375 So.2d 561 (Ala.Cr.App. 1979), and cases cited therein.
Furthermore, even had the record been properly preserved, because of the high degree of confidentiality which has historically attended the attorney-client relationship, we can see no valid reason which would require a prospective juror to divulge to the world the nature of such relationship with one of the lawyers now representing other parties in a case he may be called upon to decide.
Also, during the voir dire of the jury, and after asking several questions concerning the issue of insanity which were not objected to by the State, defense counsel asked the following questions:
 "Do any of you have difficulty with the proposition that a person over the course of a number of years can become so addicted to alcohol that as a result thereof his mental condition can deteriorate to a point where he is no longer legally responsible for his actions?"
The trial court sustained the State's objection to this question.
As stated previously, the scope of voir dire examination is within the broad discretion of the trial court. Fletcher v.State, 291 Ala. 67, 277 So.2d 882 (1973); Peoples, supra. It has specifically been held not to be an abuse of discretion for the trial court to sustain an objection to questions by defense counsel to jurors as to their individual feelings toward the use of alcoholic beverages. Steel v. State, 363 So.2d 1060
(Ala.Cr.App. 1978). Questions which border on argument should be avoided. Peoples, supra. *Page 898 
We further note that in the present case the trial court's examination of the prospective jurors was thorough and extensive. When such is the case, it has been held not to be an abuse of discretion to refuse every question requested by defense counsel. Holmes v. State, 342 So.2d 28 (Ala.Cr.App.), cert. denied, 342 So.2d 36 (Ala. 1977).
In addition, the trial court permitted defense to conduct a lengthy examination of the prospective jurors, allowing thirty-four of defense counsel's thirty-five questions. Exparte Finley, 292 Ala. 424, 295 So.2d 428 (1974). Clearly, there was no abuse in the trial court's discretion in so limiting the voir dire questioning.
 III
Photographs of the deceased were admitted without error.Lewis v. State, 339 So.2d 1035 (Ala.Cr.App. 1976), cert. denied, 339 So.2d 1038 (Ala. 1976).
 IV
Whether leading questions will be allowed is within the sound discretion of the trial court and that discretion will not be reversed absent an abuse. Chambliss v. State, 373 So.2d 1185
(Ala.Cr.App.), cert. denied, 373 So.2d 1211 (Ala. 1979). Each case must rest on its own particular circumstances. Blunt v.Strong, 60 Ala. 572 (1877).
Moreover, as stated in Gamble, McElroy's Alabama Evidence, § 128.01 (3rd ed. 1977):
 "It is a generally recognized exception to the opinion evidence rule that a witness, lay or expert, may give his opinion as to the sanity of another person. A lay witness may testify that another was sane or of sound mind if he has first testified to facts showing that he had an adequate opportunity to observe such other's conduct and that he observed nothing irrational or abnormal in such other's conduct. . . ."
We have carefully reviewed the testimony of Phillip Roy Minno, the taxicab driver who drove appellant from the Bay Service Station in Phenix City to Smiths Station at approximately 7:05 a.m. the morning the deceased was murdered, and find no abuse in the trial court's discretion in allowing certain leading questions. Based on Minno's opportunity to observe appellant and converse with him for ten to twelve minutes during appellant's cab ride, it was not error for Minno to state that appellant appeared to be "just a normal individual." Furthermore, appellant's objection to Minno's "opinion" came too late after Minno had answered the question.Miller v. State, 52 Ala. App. 525, 294 So.2d 774 (1974).
 V
During closing argument by the State, the following occurred:
 "MR. MYERS: — Not a place that he walk [sic] away from, not to a place that he can escape if he decides to —
 "MR. MELTON: Your Honor, we're going to object. That's improper argument. Move for a mistrial.
"THE COURT: Overruled.
The record shows no other remarks by defense counsel or the prosecutor in this connection.
The official court reporter is not required to transcribe the argument of counsel except where objection is made. McClary v.State, 291 Ala. 481, 282 So.2d 384 (1974); Langford v. State,354 So.2d 297 (Ala.Cr.App. 1977), rev'd on other grounds,354 So.2d 313 (Ala. 1978); Ala. Code § 12-17-275 (1975). Remarks by the prosecutor deemed objectionable should be fully quoted, or substantially so, in any objection to improper argument.McClary, supra, and cases cited therein. Appellant's objection here is too fragmentary to present the questions insisted upon.
 VI
There was no error in the admission of appellant's written confession. Appellant was fully advised of his constitutional rights before the confession was made and signed a written waiver. Additionally, appellant took the witness stand *Page 899 
and presented testimony substantially the same as the language of the confession. Mack v. State, 348 So.2d 524 (Ala.Cr.App. 1977).
We have carefully considered each issue raised by appellant. In addition, we have searched the entire record as required by law for any prejudicial error affecting appellant's substantial rights and have found none.
AFFIRMED.
All the Judges concur.