(115 So. 701)

## MERRILL v. STATE.   (6 Div. 163.)

Court of Appeals of Alabama.   March 6, 1928.

P. A. Nash, of Oneonta, A. A. Griffith, of Cullman, and Borden Burr, of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

RICE, J. France Reid was killed on the night of March 26, 1926, between 7 and 8 o'clock. There were only two eyewitnesses to the killing, Bob Merrill, who is the appellant here, and one Henry Vaughn. Vaughn was a justice of the peace, and Merrill a constable. These two had set out, it appears from their testimony, on a raiding expedition, looking for liquor law violators. A short time prior to the fatal difficulty these two had stopped and searched a truck driven by Dennis Reid, a nephew of the deceased. Finding nothing, they proceeded on their way, but had not gone far when they heard some pistol shots fired in rapid succession. Interpreting these shots as warning signals given by one bootlegger or distiller to another, these two retraced their steps in the direction in which the shots had been fired, proceeding along the big road to a cut-off, or private road leading to the premises of the deceased. On reaching the mouth of the private road, they descried a man coming toward them with something in his hand. He came out into the main road, and said, according to their contention, addressing the defendant, "Bob, who did you search here?" The defendant replied, "France, I don't know

as it is any of your business." Thereupon deceased raised his shotgun and fired point-blank at the defendant; the shot all but grazing the side of his face. Defendant fired almost immediately; one shot taking deadly effect in the body of deceased, who staggered back some six or eight feet and fell. Defendant and his witness Vaughn each testified that the combatants stood on level ground, or, if any advantage there was as to elevation, deceased had it.

Vaughn further testified that he left defendant with the dead man, and went to the home and then to the store of "Little" Francis Reid to use his telephone in making report of the affair to the sheriff.

The direct evidence for defendant was countered by the state with evidence of physical facts with which the defendant's evidence did not coincide, and some evidence of an impeaching nature. Several witnesses for the state testified to the location of certain logs and a big rock near the scene of the crime; to bullet marks upon this rock, and to the presence of shots in the ends of the logs. Also, they testified, that along the ground, between the scene of the shooting and the rock and log, there was a furrow made by the discharge from the shotgun—all this indicating that deceased was on a lower elevation than that of his assailant. Two physicians testified that the pistol ball causing deceased's death entered his body near the collar bone, and ranged downward, and that this fact indicated that said pistol ball was fired by one who stood above the deceased. There was also evidence tending to show that the pistol shots were antecedent to those of the shotgun, and that the only weapons there were the pistol used by appellant and the shotgun used by deceased.

There was some evidence that deceased was a drinking man, and had made threats against defendant, who was active in the pursuit of those dealing in or with whisky. There was a tendency of evidence that Dennis Reid met his uncle, the deceased, soon after his searching at the hands of defendant and Vaughn, and reported the matter to deceased, who drove off with the statement that he would "attend to the matter." This latter tendency was contradicted by Dennis Reid.

■■ It is first complained that the trial court erred in permitting the state to inquire of defendant's witness Vaughn, "While you were walking along there, I will ask you if you did not have this shotgun hidden, that it was up under your arm and coat?" Defendant's objection to the question was overruled. The answer was in the negative. This witness had testified that he took the gun from the deceased's hands after it was fired, and that he took it to Oneonta and turned it over to the sheriff. Having testified on di-

rect examination in detail as to the difficulty and to his subsequent conduct up to the time of his return to the scene with other men, after reporting the matter to the sheriff, it was clearly competent for the state to cross-examine him about these same matters, and thereby to lay a predicate for evidence tending to impeach him as a witness. Vaughn testified that he went to "Little" Francis Reid's house, and went with him to Reid's store to use the telephone. He was asked by the solicitor if, while walking along with Reid, Reid did not ask him what he was doing with the gun, and if Vaughn did not reply that "we have had a fight and killed a man to-night, we had a shooting scrape?" Objection to this question was overruled. It also was answered in the negative. In this there was no error. It was permissible for the purpose of showing contradictory statements by the witness.

There are some other rulings on the admissibility of evidence reserved by exception, but not insisted on in briefs. Nevertheless, in accordance with our duty, we have given them careful consideration, and find them to be without prejudice to defendant's case.

The prosecuting attorney, in his argument to the jury, said: "When a man goes wrong and has a bad character, it comes out in his face, and now, gentlemen of the jury, look at that mug," pointing his finger at the defendant. The defendant objected to the remarks, and moved their exclusion from the jury. The court sustained the objection, and granted the motion. The defendant moved to withdraw the case from the jury on account of the improper argument, which motion the court overruled. Defendant reserved an exception.

Later the prosecuting attorney used this language: "Now this murderer over there (referring to defendant) tells the most unusual story," etc. The defendant objected to the language, and moved its exclusion from the jury. The court sustained the objection, and granted the motion. The defendant moved to withdraw the case from the jury on account of the improper argument, which motion the court overruled. Defendant reserved an exception.

And again, the prosecuting attorney said: "They raise up here every five minutes and ask that the case be continued." The defendant objected to this statement, and moved its exclusion from the jury, which objection was sustained, and motion granted. The court, in granting the motion to exclude the remarks from the jury, used this language: "I will exclude it from you, and of course you will not consider it at all for any purpose."

The defendant moved to withdraw the case from the jury on account of the improper argument, which motion was overruled; defendant reserving an exception.

We are of the opinion that in the first two instances of the transgression, by the prosecuting attorney, of the rules of legitimate argument, which we have quoted above, the trial court did all that was necessary. But, keeping in mind what has been called, somewhere in the books, the "atmosphere" of the trial, as disclosed by this record, we are persuaded that, when the prosecuting attorney said, "They raise up here every five minutes and ask that the case be continued," some more drastic action should have been taken by the trial court than merely excluding this statement, in the language we have quoted above.

One of the best and clearest discussions of the rules that should be applied in instances of this kind was, we think, written by Judge Ben P. Crum, of this court, in the case of Alabama Iron & Fuel Co. v. Benenante, 11 Ala. App. 644, 66 So. 942, and from the opinion in that case we quote as follows:

"Certainly, when improper argument is made, objection by the opposing party should be promptly made, and the attention of the presiding judge called thereto, in order that he may then and there, in the proper way, express his disapprobation and as effectually as possible eradicate from the minds of the jury any impression thereby created.

" 'Nothing short of such action on the part of the court, * * * and a clear satisfaction that the injustice thereby done has been removed, should rescue the case from error on appeal, or from a new trial, on the motion of the party against whom it was rendered.' Scott v. State, 110 Ala. 48, 53, 20 So. 468, 470.

"In Florence C. & I. Co. v. Field, 104 Ala. 471, 480, 16 So. 538, 540, the court sustained an objection to a remark of counsel, and stated to counsel making it that the remark was improper, whereupon counsel remarked, 'Well, I withdraw the remark.' No exception was reserved, and no motion for a new trial was made. The court said: 'The remark was calculated to seriously prejudice and injure the defendant with the jury. The action of the court in excluding it was very mild, and not a sufficient antidote to the poison that had been injected into the minds of the jury by the use of such language. Verdicts ought not to be won by such methods, and when an attorney, in the heat of debate, goes to such extraordinary lengths, generally, the court should promptly set aside any verdict that may be rendered for his client. The repressive powers of a court, to prevent such departures from legitimate argument of a cause before a jury, should be vigorously applied. No mere statement that it is out of order or improper can meet the exigencies of the case.'

"See, also, Johnston v. Brentley, 2 Ala. App. 281, 56 So. 742; Hammock v. State, 7 Ala. App. 112, 61 So. 471.

"It was said by that eminent judge, Stone, in commenting upon an improper argument of counsel: 'The court might, and * * * should, have arrested it ex mero motu. It is one of the highest judicial functions, to see the law impartially administered, and to prevent,

as far as possible, all improper extraneous influences from finding their way into the jury box. And when opposing counsel objected to the improper language employed, and called the attention of the court to it, it was not enough that offending counsel replied, "Oh, well, I'll take it back." Such remark cannot efface the impression. The court should have instructed the jury, in clear terms, that such remarks were not legitimate argument, and that they should not consider anything, thus said, in their deliberations. Nothing short of a prompt, emphatic disapproval of such line of argument, and that from the court itself, can avert the probable mischief.' Wolffe v. Minnis, 74 Ala. 386, 389.

"The correction should have been as broad as the error committed."

We could not for lack of space quote all that was said by Judge Crum, but we think the excerpt from the opinion written by him, which we have given, is sufficient to demonstrate the correctness of our conclusion here that the more or less perfunctory manner of granting defendant's motion to exclude the argument, under consideration, of counsel for the state, did not meet the exigencies of the situation. Failing to take sufficient measures to eradicate the harm done by the manifestly improper and highly prejudicial remark, it was, we hold, error not to grant defendant's motion to withdraw the case from the jury.

Defendant sought to have the jury instructed that, as matter of law, defendant was under no duty to retreat. The trial court properly declined to do so. First, if it be based on the fact that defendant was an officer of the law, it was bad, for the reason that there is nothing in the evidence to show that he was acting in an official capacity at the time of shooting, nothing to suggest an attempted arrest. Second, if it proceed upon the idea that one murderously assaulted need not retreat—and appellant apparently so treats it—the affirmative form of the charge would have erroneously assumed as a fact that a murderous assault was made by deceased, thus invading the province of the jury.

A charge that if, at the time defendant shot deceased was making a murderous attack on him, then the law did not require defendant to retreat, is improper, in that it pretermits freedom from fault in bringing on the difficulty or in provoking the attack. Williams v. State, 140 Ala. 10, 37 So. 228.

We find no error in the other charges refused to defendant. Those correctly stating the law were fully and fairly covered by the oral charge and the numerous charges given at defendant's request.

For the error pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.